Crommelin v. Coxe & Co.

---

# CROMMELIN vs. COXE & Co.

[ACTION ON THE CASE FOR INJURY CAUSED BY PRIVATE NUISANCE.]

1. *When case lies for private nuisance.*—An action on the case lies for damages caused by an accumulation of rain-water in an open cellar, and its percolation through the earth into plaintiff's cellar on an adjoining lot; and the fact that the cellar was dug by the former owner of both lots, and has been suffered by the defendant simply to remain in the condition in which it was at the time of his purchase, is no defense to the action.

2. *When case lies for public nuisance.*—An action on the case lies, at the suit of a private person, for special damages caused by a public nuisance.

3. *What title will support action.*—The action lies in favor of a party in possession, even without title.

4. *When notice to defendant is necessary.*—Before an action can be maintained against the owner of an unoccupied lot, for the mere continuance of a nuisance erected by a former proprietor, it must be shown that he had notice or knowledge of the hurtful tendency of such nuisance, or was requested to abate it.

5. *Want of ordinary care on part of plaintiff.*—A want of ordinary care on the part of the plaintiff, in avoiding an injury from a nuisance erected by another, is a full defense to the action; but the law does not require him to abate the nuisance, although it authorizes him to do so.

6. *Proof of notice.*—The fact that defendant was notified, by the corporate authorities of the town within which his lot was situated, that an open cellar thereon was a nuisance, is admissible evidence to prove notice to him of the hurtful tendency of his cellar. ·

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN GILL SHORTER.

THE complaint in this case was as follows:

Crommelin v. Coxe & Co.

"Richard Coxe & Co. ⎫ The plaintiffs claim of the de-
   vs.   ⎬ fendant $2,500 damages, for in-
Charles Crommelin. ⎭ juries and losses resulting to them
from the defendant's negligence and improper conduct, as
follows : Plaintiffs are, and were at and before the time
of the grievances hereinafter set forth, in the lawful occu-
pancy and possession of a certain tenement, situated and
being in the city of Montgomery, on lot No. 1, in square
No. 15, in that part of said city known and called 'East
Alabama' ; said tenement having a cellar, and the same,
together with said cellar, being used by plaintiffs as a
hardware store, of which defendant had knowledge before
the grievances hereinafter named; and plaintiffs having
had therein, and at the time aforesaid having therein,
various kinds of iron, nails, tools, cutlery, &c., including
everything usually kept in a well-assorted hardware store.
The defendant is, and hath been for a long time, to-wit,
the space of five years next before the commencement of
this suit, seized and possessed in fee of lots Nos. 8, 9, and
10 in said square, which said lots are unimproved, and
contiguous to the lot on which is situated the tenement
used and occupied by plaintiffs as aforesaid. Plaintiffs aver,
that on defendant's said lots, and particularly on lot No.
10, there are, and for several years next before the com-
mencement of this suit have been, large excavations in
the earth, to-wit, two in number, each thirty feet long,
twenty feet wide, and ten feet deep; which said excava-
tions, plaintiffs aver, defendant hath, for and during the
period of three years next before the commencement of
this suit, negligently permitted to be, continue and re-
main open and uncovered, so that they now are, and for
the space of time aforesaid have been, receptacles for
falling or rain water, and, in wet seasons, become filled
therewith, there being no sufficient way or means provided
for conducting the same off, and keeping the said excava-
tions dry. Plaintiffs further aver, that on the 1st day of
October, 1852, and on divers other days between that day
and the commencement of this suit, said excavations were
filled with water, which collected in large quantities therein,
and forced its way therefrom, by subterranean passages,

into the cellar of the tenement occupied and used by plaintiffs as aforesaid, in such large quantities as to completely overflow the said cellar. And plaintiffs aver, that before said 1st day of October, 1852, and before the injuries done by the overflow of plaintiffs' cellar as aforesaid, defendant had knowledge of the existence of plaintiffs' said tenement and cellar, and of the contents thereof, and of plaintiffs' occupancy of the same; and that said water, so forced into said cellar as aforesaid, submerged large quantities of iron, nails, hoop-iron, and other wares, the property of plaintiffs, then and there being in said cellar, and of great value, to-wit, of the value of $5,000; by means whereof, said iron, nails, hoop-iron and other wares were greatly damaged and injured, to-wit, to the extent of $2,000. And plaintiffs further aver, that at the times, and by the means aforesaid, they were put to great trouble, labor and expense, in removing said water from their cellar, and in removing and replacing their said iron and other wares; that the health of plaintiffs, and of the inmates of their said store, was thereby then and there greatly endangered, and their abode in said store rendered unhealthy, uncomfortable, and disagreeable; to plantiffs' damage $2,500, which they claim and sue for in this suit."

A demurrer was interposed to this complaint, but was overruled by the court. The causes of demurrer assigned were—"1st, that plaintiffs have not, by their said complaint, shown any fact creating a duty on the part of defendant to fill up the excavations alleged to have been on his lots, or to drain or conduct the water from said excavations, or to keep said excavations dry, or free from water; 2d, that there is no allegation of notice to defendant to fill up said excavations, or that the effect of leaving them open would be to cause the water to flow through the earth, as alleged, into plaintiffs' cellar; 3d, that said excavation is not shown to have been made by the defendant, nor by any one for whose act he is responsible; 4th, that no request to fill up said excavation, or otherwise to protect plaintiffs from damage, is alleged to have been made of the defendant; 5th, that no knowledge of the

probable injury to plaintiffs' property is alleged in the defendant."

The evidence on the trial is thus set out in the bill of exceptions:

"The plaintiffs proved that they occupied a tenement, with the cellar thereof, as tenants of E. J. Donnell, in which cellar were stored articles of hardware, in the selling of which he was engaged in business, and for which purpose he had rented said premises; that defendant was the owner of an adjoining lot, which was open and unimproved, and on which there was a cellar, open and exposed, in which the rain-water was accustomed to run, filling it to the depth of from two to four feet, according to the quantity of rain that fell; that said open cellar was about twenty-five feet wide, thirty-five feet long, and five feet deep, and was within fifteen feet of the wall of plaintiffs' said cellar; that said open cellar, after a heavy shower of rain, was filled with rain-water about four feet deep, which percolated the earth between the two cellars, penetrated through the wall into plaintiffs' cellar, filled it to a depth of twelve or fifteen inches, and damaged plaintiffs' goods therein situated; that this heavy rain came in the night-time, and plaintiffs had no notice that the water was flowing into their cellar until the next morning, when the injury had been accomplished.

"The defendant proved, that the lot on which plaintiffs' tenement was situated, and the lot owned by him, formerly belonged to one Abner McGehee; that there was then a building on said lots, covering the entire space, under which was a cellar, running uninterruptedly through the whole space; that this cellar was dug by said McGehee while he was the owner of the whole property, and remained one continued excavation until the building over it was burned down in 1838; that said lots and cellar remained open and exposed while in the possession of McGehee, who, in September, 1843, sold to Pollard & Scott the lot on which stands the tenement now occupied by plaintiffs, and, on the same day, sold the other open lot to defendant; that Pollard & Scott built a house on their lot, extending to within sixty-five feet of the line of

defendant's lot, cleared out the old cellar so far as this building extended, filled up the intervening space between it and the cellar on defendant's lot with the rubbish removed from their part of the old cellar, brick-bats, and loose earth, and built a brick wall to their cellar, as far as it extended, leaving an intervening space of sixty-five feet between their wall and defendant's said lot and cellar; that Pollard & Scott, about 1852, sold their lot to said Donnell, who extended the building to within fifteen feet of defendant's lot and cellar, and extended his cellar the same distance, leaving the intervening space filled up with the same materials that had been used by said Pollard & Scott; that during the time the cellar opened by Pollard & Scott existed in the state in which it was left by them, no water from the old cellar on defendant's lot leaked into it, or in such small quantities as did no damage; and that it was only after the extension of the cellar by Donnell, as aforesaid, that water from the old cellar leaked into it in any considerable quantity.

"There was evidence, also, showing that the materials used by Pollard & Scott in filling up the intervening space between their cellar and the old cellar on defendant's lot, were of a character to serve as a secret drain for the water in the old cellar, and calculated to permit the easy percolation of this water to the wall of the cellar extended by Donnell as aforesaid; that this wall was of brick, as was also the flooring of the cellar, without the use of hydraulic cement; that the water percolated through the intervening space between the two cellars, and then leaked through this wall into plaintiffs' cellar; that the injury might have been provided against and prevented, by the use of denser materials in filling up the intervening space between the two cellars, such as clay, or firm soil. There was proof, also, that defendant's lot and open cellar remained in the same condition as when defendant bought from said McGehee, except that he had sunk a well in the old cellar, before the occurrence of said injury, for the purpose of absorbing into the earth the water which accumulated therein, but that this did not do it readily and effectually. There was evidence, also, that defendant had notice, before the oc-

currence of the injury, of the danger of injury to the goods in the plaintffs' cellar from the accumulation of water in his old cellar; but there was no evidence that defendant had done anything, directly or indirectly, to cause the injury, or to make it more probable, and his acts were wholly acts of omission.

"Plaintiffs offered in evidence a notice, served upon defendant by the board of health of the city of Montgomery, to the effect that said cellar on his lot was a nuisance, because of the accumulation of water therein, and requiring him to remove the water therein standing. This notice was in relation to water which had accumulated in said cellar from rains previous to that which had caused the damage to plaintiffs' goods. In connection with said notice, plaintiffs offered evidence that defendant did not remove the water in his cellar. This was offered as evidence of notice to defendant of the fact that water did accumulate in his cellar, and that injury was likely to occur to plaintiffs' goods from such accumulation of water. For this purpose only the evidence was admitted by the court, against the defendant's objection; and the defendant excepted.

"This was all the evidence in the case; and thereupon the court charged the jury, that if the defendant was the owner of the lot adjoining the premises occupied by plaintiff, and there was on his lot an open and exposed cellar, in which the rain-water was accustomed to accumulate, and that defendant had notice that this accumulation of water was likely to injure plaintiffs' goods in the adjoining cellar, by percolating through the intervening earth into plaintiffs' cellar, and did not take the steps necessary to prevent this which would have been taken by an ordinarily careful and prudent man, and that plaintiffs afterwards sustained an injury to their goods from the percolation and flow of this accumulated water into their cellar,—then plaintiffs were entitled to recover.

"The defendant excepted to this charge, and requested the court to instruct the jury,—

"1. That if plaintiffs knew of the danger to the goods in their cellar from the washing of water from defendant's

cellar, then, if the jury believed that the injury might have been prevented by any slight precaution on the part of plaintiffs to protect their cellar and goods from injury, plaintiffs could only recover the amount which would have been required to protect themselves, with interest thereon. ·

"2. That if they believed that plaintiffs' lessor knew of the danger to his cellar from the washing of water from defendant's cellar, and might have protected his cellar against it by filling up the intervening space between the two cellars with firm earth, the plaintiffs could only recover as damages the amount which it would have cost to do this, with interest thereon."

The court refused these charges, and the defendant excepted to each refusal; and he now assigns as error all the rulings of the court to which, as above stated, exceptions were reserved, together with the overruling of his demurrer to the complaint.

H. C. SEMPLE, with whom was JNO. A. ELMORE, for the appellant.—1. The demurrer to the complaint should have been sustained, because it showed no duty on the part of the defendant to fill up the cellar.—Coventry v. Stone, 2 Starkie, 534.

2. The charge of the court is erroneous. In effect, it makes the defendant responsible for any injury which might happen to plaintiffs' property in their cellar, though the cause of the injury may have been in existence for one hundred years. In all the cases, in which a proprietor has been held responsible for such an use of his property as injured his neighbors, there was some positive act done by him; and no single case can be found, where such proprietor has been held liable for an *omission*, without first alleging and proving a duty to perform some act which has been omitted.—Wyatt v. Harrison, 3 Barn. & Ad. 871; Partridge v. Scott, 3 Meeson & Welsby, 220; Massey v. Goyner, 4 Car. & P. 161; Peyton v. Mayor of London, 9 Barn. & Cress. 725; 3 C. & P. 363.

As the plaintiffs' landlord purchased from the original proprietor of both lots at the same time that the defend-

ant purchased; and as the defendant's premises were left in the same condition as at the time of his purchase, his vendor could not have maintained an action against him, for an injury to the adjoining lot, if he had continued to own it; consequently, he could not transfer to plaintiffs' landlord a right which he did not himself possess. Suppose A. owns a piece of ground, on which is a large pond; he drains the pond by a ditch, running through, and emptying on his own land; he then sells the entire tract, at the same time, to B. and C., B. buying that part on which the pond was situated, and C. that part on which the ditch empties,—could C. maintain an action against B., for an injury to his land caused by the discharge of water through the ditch?

WATTS, JUDGE & JACKSON, *contra.*—1. The complaint is founded on a private nuisance, or on a private injury from a public nuisance, either of which will support an action. Stetson v. Faxon, 19 Pick. 147; Pittsburg v. Scott, 1 Penn. State R. 309; Lansing v. Smith, 4 Wendell, 9; 1 Root, 362.

2. The main question is, whether the action lies for the act of omission disclosed by the evidence. The excavations which caused the injury, and which were made before Crommelin became the owner of the property, were a nuisance; consequently, an action lies for Crommelin's continuance of them.—Staple v. Spring, 10 Mass. 72; Plumer v. Harper, 3 N. H. 88; Rogers v. Stewart, 5 Vermont, 215; Hodges v. Hodges, 5 Metcalf, 205; Irwin v. Sprigg, 6 Gill, 200; State v. Navigation Co., 2 Johns. 286; Coupland v. Hardingham, 3 Camp. 398.

3. To sustain the action, it is not necessary that the plaintiff should have a freehold estate in the premises: it is sufficient that he is in possession.—Carnes v. Harris, 1 Comstock, 223.

4. That the intervening space between the premises of plaintiffs and defendant was filled up with rubbish, instead of firm earth, is no defense to the action. Admitting that it would be a good defense to an action by Donnell, plaintiffs' landlord, it cannot affect plaintiffs, who, being mere

lessees, had no right to make any serious disturbance of the freehold.

.5. No notice to Crommelin, to fill up the excavation, was necessary.—See cases above cited. Moreover, notice was proved.

STONE, J.—The owner in fee of the soil is proprietor both above and below the surface, as far as he has capacity to use and enjoy the freehold.—2 Bla. Com. 18 ; 1 Cruise's Digest, 69. This right he may exercise at his discretion, qualified alone by the maxim, pertinent to all such cases, *sic utere tuo, ut alienum non lœdas.*

Applying this doctrine to the case before us, it was the unquestioned right of the appellant to change the natural state of his property, by excavations or otherwise, or to continue such change if wrought by another. The owner of the property occupied by the appellees had the same right. Each proprietor was supreme within his own dominions; and to guaranty that supremacy to each, it was necessary that each should be brought under the control of the maxim above expressed. Each had the right to sink and enjoy a cellar on his own premises ; while neither party was permitted, in the exercise of that right, to abridge, or render less comfortable, the equal privilege of the other.

It is contended for appellant, that as the excavation which caused the injury was made by his vendor when he was owner of both lots, and as appellant had done no act—had simply permitted the property to remain in the state it was in when he purchased,—no liability can attach to him. We think he acquired by his purchase no greater rights than his vendor had ; and certainly he had no right either to erect or continue a nuisance, to the detriment of the public, or a neighboring proprietor.

If it be further objected that the excavation made in this case, by Mr. McGehee, caused no injury to any neighboring proprietor ; that the injury expended its entire force on him, and that when he sold the several lots, he sold them thus encumbered,—we think that this objection, though plausible, is not solid. Suppose Mr.

McGehee, owning the two lots, had erected on one a
nuisance which rendered the occupation of the other
unwholesome. While he continued the owner of both
lots, no one could be heard to complain of this. Suppose
he then sold the lot thus rendered unwholesome, and
should be sued for continuing the nuisance; could he
defend on the ground that the nuisance was there when
the plaintiff bought, and that he therefore bought *cum
onere?* No one, we apprehend, would contend he could.
Each continuance of the nuisance, after the sale, would be
a new wrong done to the vendee.—Stein v. Burden,
29 Ala. 127.

We think every species of private nuisance stands on
the same priciple. Having himself no right to continue
the nuisance, it is clear the person thus circumstanced
could not transfer such right to another.

In the case of Irwin v. Spring, a house had been erected
forty or fifty years before, having a cellar, with an open
area or space in the side-walk, to admit light to the window
of the cellar. Defendant had owned the property about
twelve years, continuing it in the same condition in which
it had been since its erection. The plaintiff fell into this
area, and received the injury for which she sued. The
court said, "Although the defendant did not originate the
nuisance, yet, as he subsequently became the owner of the
house to which it belonged, the law imposed upon him
the obligation to render it secure."—6 Gill. 200.

Lord Ellenborough said, in a similar case, "However
long the premises might have been in this situation, as
soon as the defendant took possession of them, he was
bound to guard against the danger to which the public
had been before exposed, and was liable for the conse-
quences of having neglected to do so, in the same manner
as if he himself had originated the nuisance."—Coupland
v. Hardingham, 3 Camp. 398. See, also, Lewis v. Stein,
16 Ala. 214; Hodges v. Hodges, 5 Metc. 205; Staple v.
Spring, 10 Mass. 72; Miller v. Frazer, 3 Watts, 456;
Plumer v. Harper, 3 N. H. 88; Loftin v. McLemore,
1 Stew. 133; Wagoner v. Jermaine, 3 Denio, 306; Mills v.
Hall, 9 Wend. 315.

In the cases from Gill and Campbell, *supra*, the continuance complained of consisted of a mere omission, without any act done in either case ; and in each case it was held, that the action was maintainable. We fully sanction the principles there settled, and hold that, under a proper complaint, an action may be maintained for the injury sued for.

It is no valid answer to the action, that the nuisance was public. An action may be maintained for a public nuisance, by a party who has been damaged specially, and beyond the general public injury.—Dougherty v. Bunting, 1 Sand. Sup. Ct. Rep. 1 ; Obrien v. Norwich & Worcester R. R. Co., 17 Conn. 372; Seely v. Bishop, 19 Conn. 128 ; Harrison v. Sterett, 4 Har. & McH. 540 ; Abbott v. Mills, 3 Vermont, 529 ; Lansing v. Smith, 8 Cow. 146.

A party in possession, even without title, may maintain the suit.—Blunt v. McCormick, 3 Denio, 283.

The second ground of demurrer is well taken. For continuing a nuisance by omitting to reform it,—a mere non-feasance—where the continuance implies no action, we are satisfied no action can be maintained, unless the party owning the property have notice or knowledge of the hurtful tendency of the nuisance, or be requested to abate it.—Penruddock's case, Coke's Rep. 5th part, page 101; Beswick v. Cumden, Cro. Eliz. 520; Pierson v. Glean, 2 Green, 36; Loftin v. McLemore, 1 Stew. 133.

We are aware that, in the cases of Lewis v. Stein, Irwin v. Spring, Coupland v. Hardingham, *supra*, and in some other authorities, the liability is stated in general terms, without any reference to notice or request. In all these cases, when examined, it will be found that the continuance was in its nature a new creation of the nuisance. The defendant, in each case, was in the actual occupation and use of the very structure which caused the nuisance. Hence he must have had knowledge of the same.

In this case, the lot was unimproved; it does not appear that any one was in possession, and we do not feel authorized to presume that the appellant knew of the hurtful tendency of the excavation.

The last paragraph refers alone to the complaint. The proof is more full.

It is true, the plaintiffs in this case would not be heard to complain, if with ordinary care and diligence they could have avoided the injury. "A party is not to cast himself upon an obstruction, which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right." Butterfield v. Forrester, 11 East, 61; Irwin v. Spring, *supra*.

We do not, however, consider that the charges asked and refused raise this question. Although a party may reform or abate a nuisance, which threatens to damage his property, we are aware of no principle of law which requires this at his hands. The author of the nuisance must himself look to the necessary and reasonable consequences of his act.

There was no error in admitting the evidence objected to. It was offered for the single purpose of proving notice to defendant of the condition of the cellar, and for this purpose we think it was competent.

For the defect in the complaint, the demurrer should have been sustained; and for that error, the judgment of the circuit court is reversed, and the cause remanded.