186 So. 168

**STATE ex rel. BAILES, Solicitor, v. GUARDIAN REALTY CO. et al.**

6 Div. 401.

Supreme Court of Alabama.

Jan. 12, 1939.

Rehearing Denied Feb. 9, 1939.

202

Geo. Lewis Bailes, Sol., and J. Edw. Thornton, Deputy Sol., both of Birmingham, for appellant.

Wm. S. Pritchard and David R. Solomon, both of Birmingham, for appellees.

KNIGHT, Justice.

The bill in this cause was filed by the State of Alabama, on relation of George Lewis Bailes, as Solicitor of the Tenth Judicial Circuit of Alabama, to enjoin and abate a public nuisance. The bill was filed under the provisions of Sections 4281–4283 of the Code.

The bill of complaint, as amended, charged that the respondents, Mose A. Blumberg and the Guardian Realty Company, a Corporation, owned, maintained or operated a place or building, known as the Suburban Hotel, in the City of Birmingham, Jefferson County, Alabama. That said place was maintained, or resorted to, for the purpose of gaming, or gambling, and gaming tables, or other gaming devices were kept, maintained, or operated at said hotel for the purpose of permitting persons to game, or gamble thereon, or therewith; that said Suburban Hotel, "as being owned, maintained or operated by the respondents, is provided with bells, wires, signals and other implements or appliances, communicating with the occupants of a room, or rooms, in said hotel, the said occupants using said room or rooms for gaming, or gambling;" that said hotel so owned, maintained or operated by the respondents has bars, locks, or barricades on the door, or doors, which prevent the access of any law enforcement officer to said room or rooms, where gambling, or gaming is carried on; and that said hotel, so owned, maintained or operated by the respondents, has a table or tables, cards, "poker chips," or chips for use in gambling, "whereon and wherewith two or more persons there present have been permitted to, and have gamed or gambled in a room, or rooms, provided with bells, wires, signals, or other implements, or appliances for communicating with the occupants of said room or rooms in said hotel, and said room or rooms have bars, locks or barricades on the doors which prevent access of any law enforcement officer to said room or rooms."

The bill prayed for preliminary writ of injunction against the respondents' per-

mitting the hotel to be used for gambling, and for a mandatory injunction requiring the removal of all unlawful signal devices and barricades on doors to the said room or rooms, and that upon final hearing the injunctions be made perpetual.

The respondent Mose A. Blumberg filed answer to the bill in which he denied the material allegations thereof, which charge the illegal use of the hotel, but admitted he operated the same under a lease from the Guardian Realty Company, the owner, and by way of amendment filed in the cause on the day of final hearing, he averred that, since the filing of his original answer, he had terminated "his interest in the Suburban Hotel and no longer operates .the same as a hotel nor for any other purpose." That he had turned the same over to William Montgomery who is now operating the same as a hotel, and holds a lease from the respondent, the Guardian Realty Company. In his answer as originally filed, the respondent Blumberg admitted that he was one of the operators of said hotel.

The respondent Guardian Realty Company filed its answer on July 20, 1938, which was the day of the final hearing. In its answer, this respondent admitted that it was the owner of the premises, but denied all the allegations of the bill charging illegal use of the property, and averred that it was a corporation, whose stockholders and directors were reputable business men in the City of Birmingham, Alabama; that no one of them had ever been arrested or convicted of gambling, or maintaining a gambling house. It is also averred that on July 7, 1937, it rented the premises to W. W. Jackson and M. A. Blumberg; that said lease began on October 1st, 1937, and by its terms ended on September 30, 1938; that said lease contained an express "prohibition against violation or permitting by the lessee of any part of the premises to be used for any immoral, illegal or purpose prohibited by the State, County, City or federal laws;" that neither the respondent, nor any officer, servant, agent or employee ever had any knowledge or notice "that any illegal acts whatsoever, and especially the illegal acts complained of, in the bill, were being committed on the leased premises, until after the filing of .the bill in this cause;" that it never participated in, nor connived at any such illegal acts.

It is further averred that on May 26, 1938, before the respondent had any knowledge or notice of any thing averred in the bill, it made, executed and delivered a lease contract to William Montgomery for said premises, to begin on· October 1st, 1938. That said William Montgomery was in no way connected with this suit or any party thereto. Upon information and belief this respondent avers that on July 16th, 1938, the said Blumberg sold, transferred and assigned every right, title and interest which he had "or will have" in the leased premises to said William Montgomery, and that said Blumberg has moved off the premises.

On the day of the final hearing, July 20, 1938, the said .Guardian Realty Company amended its answer, and in this amendment it is averred: "In addition, all gambling apparatus, of every kind and description, expressly including every article described in the bill of complaint, was removed from said premises, prior to the filing of this amendment; and at the time of said filing, there is not on said premises any gambling apparatus of any kind or description whatsoever. In addition, prior· to the taking over by said Montgomery of said premises, which was completely done and executed on said July 16th, 1938, prior to the time of filing this amendment, there was removed from said premises all warning buzzers, signals, and all other devices mentioned in said bill of complaint, and at this time there exists on said premises, no warning apparatus of any kind whatsoever."

When the bill was filed, it was presented to Judge Thompson, the Presiding Judge of the said court, he set the same down for hearing on ·July 12th, 1938, on application for temporary injunction,· and ordered that notice be given to, and a copy of the bill be served on, each of the respondents. For some reason the hearing on application was not had.

On July 20, 1938, the cause came on for hearing for *final decree,* all parties being present or represented by counsel, and the court, on submission for final decree, entered a decree denying the relief prayed for in the' bill, and dismissed the bill of complaint.

In its opinion, accompanying the decree denying relief, the court refused injunctive relief as to the respondent Blumberg upon the theory that the nuisance had, in legal effect, been abated, and that as to this respondent, "it would be a futile gesture to grant an injunction for the reason that as to him it would be a moot .question, and injunctions operate, in personam, not on a straw man."

As to the said Guardian Realty Company and the officers thereof, the court was of the opinion that it was necessary for the state to show that the owner had knowledge or notice of the illegal use of its premises by the tenant before it could be enjoined. That, inasmuch as the evidence failed to show such knowledge or notice, the state was not entitled to the relief prayed for as to this respondent.

As to both the above stated propositions, the court below was in error, as we shall undertake to demonstrate.

■ The bill was clearly sufficient in averment to invoke the jurisdiction of the court to abate the nuisance charged against the respondents.

The evidence shows, beyond any sort of doubt, real or imaginary, that the building in question was maintained, and resorted to for gambling purposes as averred in the bill; that it was equipped with bells, wires, signals, and other implements or appliances for communicating with the occupants of the gambling rooms, and that these rooms were provided with such locked doors as to prevent access of officers of the law to said rooms where the gambling was carried on; and, finally, that gambling was in fact engaged in in said building from time to time.

The evidence is without dispute that Blumberg, the tenant, had the general reputation of being a professional gambler, and this evidence, when considered along with other evidence in the case, supports the conclusion that the owner was chargeable with notice of the character of the use of the building, but we prefer to rest the result on the ground that the law requires no such notice.

■ Section 4281 provides: "All places maintained or resorted to for the purpose of gaming, and all places where gaming tables or other gaming devices are kept for the purpose of permitting persons to game thereon or therewith, are declared to be common nuisance and may be abated by writ of injunction issued out of a court of equity upon a bill filed in the name of the state by the attorney-general or any solicitor or prosecuting attorney * * *."

Section 4283 provides: "When it shall be made known to any solicitor who prosecutes criminal cases in the county by the chief of police, sheriff or other officer, or by any reputable citizen, that any hotel, tavern, inn, or other building has been provided with bells, wires, signals, or dumb waiters or any of them, or other implements or appliances for communicating with the occupants of a gaming place or rooms used for gambling, or that barred or locked doors have been provided which prevent the access of any officer to said rooms where said gaming is carried on, the solicitor shall file a bill in a court of equity against *the owner* of such building or room, *as well as the keeper or proprietor* of such hotel, tavern, inn or other building to obtain a mandatory injunction to compel the removal of all the things, implements or devices hereinabove mentioned, and to perpetually enjoin them from permitting said hotel, tavern, inn, or building to be used for the purpose of gaming, * * *." [Italics supplied.]

The statute nowhere requires that it must be shown that the owner had knowledge or notice of the illegal uses to which his property was being put by his tenant, before an injunction can be had against him and his property. When the owner's premises are put to the illegal use of a gambling resort, such premises, eo instante, become a public nuisance, and the nuisance may be abated by bill in equity.

■ It must be remembered that the proceeding of the character here under consideration is in nature both in personam and in rem. Such proceedings are characterized as quasi in rem. Dowda v. State, 203 Ala. 441, 83 So. 324; State ex rel. Egermayer v. Kelley, 151 Iowa 264, 130 N.W. 1088; People ex rel. Bradford v. Barbiere, 33 Cal.App. 770, 166 P. 812.

It must also be remembered that the statute imposes no penalty upon the owner, nor does it act retroactively, its whole purpose is prospective, having for its sole object and aim, the prevention, by injunction, of a continuation of the illegal use of the property. The owner's property is not padlocked, nor taken from him on account of the illegal use of it by his tenant, but he is enjoined from allowing a continuation of that use, that is, he is required to see to it that the property is not again diverted from lawful use and converted into a nuisance.

■ At common law the owner of premises was under the duty, and upon him rested a primary obligation, to keep his premises from becoming a public nuisance. Joice on Nuisances, § 453. The statute here invoked places no higher duty upon the owner than did the common law. It— the statute—supplies a remedy possibly

more speedy and efficacious than did the common law to abate a nuisance which the owner had created, or suffered to be created.

This duty and obligation on the part of the owner spring from the maxim, "So use your property as not to injure the rights of another."

In the case of Moore et al. v. State of Texas, 107 Tex. 490, 181 S.W. 438, which involved the question of whether it was necessary to show, in a proceeding for injunction against the owner to abate a public nuisance, that the owner knew, or had notice of, the unlawful use of his premises by her tenant, in order to enjoin her from permitting the premises to be so used, the Supreme Court of Texas, in an opinion by Chief Justice Phillips, said [page 440]:

"We are not called upon in this case, however, to apply the rule in respect to the civil liability of an owner for the maintenance by a tenant of a private nuisance. The question here is merely as to the right to have an injunction run against an owner for the abatement of a public nuisance. In such a case it is difficult to perceive how the right is affected by the owner's previous want of knowledge that the premises constitute such a nuisance. No immunity from injunction against such use of the premises is created by the want of such knowledge on the owner's part. The right to an injunction arises upon proof of the nuisance, regardless of his knowledge or want of knowledge that his premises are being unlawfully used. It is not affected by the question of the owner's knowledge; and of course is not defeated by his want of knowledge. If it is established that the nuisance exists, it then becomes simply a question of against whom the writ of injunction may properly run.

"While it is proper, and perhaps usual, to directly enjoin the immediate user of the premises in such cases, under what theory is the owner exempt from the writ? It is his duty to see that his premises are not applied to the unlawful use, and it is equally the right of the law to have him take such action as will prevent their being so used. The proceeding is not for the purpose of fastening any liability for the past use of the premises. The abatement of the nuisance by the prevention of their future unlawful use is alone its aim.

"The owner's ignorance of the past unlawful use of his property does not relieve him of responsibility for its future use.

He cannot say that because he was unaware that it had become a public nuisance, the nuisance may not be restrained and its further existence prevented by an injunction running directly against him, requiring the exercise of his authority as the owner of the property, primarily charged with the duty, inhering in his ownership, of seeing that it is not devoted to unlawful purposes. If in such cases the owner may relegate the proceeding to an action simply against those directly responsible for the nuisance and others concerned with them, it means that they alone are charged with that duty and he is exempt from it. But the law does not protect persons in the ownership of property, and then permit them to absolve themselves from all obligation in respect to the uses to which it is applied. Ownership carries its duties as well as its benefits. One of them is to keep the property from a use which is unlawful. It is imposed upon the owner because that is where it ought to rest. It is an element of his right of control over the property; his authority to direct the purposes for which it may be used.

"The operation of the writ of injunction against the owner of the premises as a means of preventing the continuance of a public nuisance maintained by a tenant, imposes upon him no hardship beyond that created by their unlawful use which it is his duty to abate. To the full extent that an injunction under this statute may accomplish the restraint of the nuisance it may be employed. To have the writ run against the owner, thereby requiring him to relieve his premises of their unlawful use, is one method by which the purpose of the proceeding may be lawfully accomplished, and it is therefore not an improper way for the remedy to be applied.

"In another view the joinder of the owner of the premises as a defendant in such a case, is warranted. The object of the injunction, if finally allowed, is to permanently enjoin the unlawful use of the premises. It is proper in the proceeding to have the owner before the court, so that, in the event the lease of the premises is terminated, he may be affected by the court's judgment perpetually restraining the continuance of the nuisance. O'Sullivan v. New York, etc., Co. [Super.] 7 N.Y.S. 51."

The Supreme Court of Iowa, [in the case of Martin v. Blattner, 68 Iowa 286, 25 N.W. 131, 27 N.W. 244], held, in a case to abate

a public nuisance, that the owner of the premises was subject to injunction, although he was without knowledge, and wholly innocent, up to the time of the filing of the bill, that his premises were being put by the tenant to an illegal use. The court based its decision upon the common law doctrine that no one can use his property, or permit it to be used by another, so as to create a public nuisance; that the right of the public in this respect was and is superior to that of the individual; and that the property of the latter must be held in subordination to the general public. That the health and morals of the community so require.

The Court of Appeals of New York, in the case of Tenement House Department of City of New York v. McDevitt, 215 N.Y. 160, 109 N.E. 88, Ann.Cas.1917A, 455, held that notice or knowledge on the part of the owner was not required in a proceeding to recover a penalty against the owner for a public nuisance created and conducted on his premises, that the owner was answerable, without reference to knowledge, or negligence, on his part. However, the purposes of this case, do not require us to go to this length, in reaching a proper conclusion in the case.

In passing on the case the New York Court observed [page 90]:

"Looking, then, to the average results, the Legislature has said that the owner must prevent at his peril a vicious use which can rarely be continued without his fault. It rules out inquiry into his excuses in the particular instance, because such excuses, if accepted, would tend to nullify the law. It frames its rules to meet the necessities of the average, rather than the exceptional, case, and adjusts its penalties in correspondence with the common experience of mankind.

"* * * The landlord who fails to suppress the continued use of his tenement for purposes of vice is in the plight of any other owner who fails to abate a nuisance on his land. If the nuisance exists, he must abate it at his peril, or answer for the consequences."

We might here cite many additional authorities holding that notice or knowledge on the part of the owner was not a material inquiry in cases very similar to the one here presented. But we deem it unnecessary.

█ A proper interpretation of Sections 4281–4283 of the Code leads to the conclusion that injunctive relief may be had against the owner regardless of whether such owner did or did not have knowledge or notice of the illegal uses to which his premises had been put by his tenant. The language of the statute is plain and unambiguous, and we would not be authorized to read into it any condition or qualification not expressed therein, such as a finding that the owner knew or had notice of the existence of the nuisance. No penalty for past wrongs is imposed by the statute, and whatever relief that may be granted must have a prospective, and not a retroactive effect. He cannot be heard to say that because he was unaware that his property had become a public nuisance, the nuisance may not be restrained and its *further existence* prevented by an injunction running directly against him, requiring the exercise of authority as owner of the property, primarily charged with the duty, inhering in his ownership, of seeing that it is not devoted to unlawful purposes. Moore v. State of Texas, supra.

█ Nor can Blumberg, the tenant, by his belated action in transferring to Montgomery his leasehold interest escape responsibility for his acts and doings in creating the nuisance, which the bill seeks to enjoin. The meaning of his actions in transferring his leasehold interest, and in removing, allegedly, from the hotel which he, by his unlawful conduct, had converted into a nuisance, is apparent. This action on the part of the tenant could not serve to make this case, as to him, moot, and the granting of an injunction, as to him, a "futile gesture," as the lower court seems to have been of the opinion, nor could such action on the part of Blumberg, the tenant, destroy the equity of the bill as to him. Gillespie v. Gibbs, 147 Ala. 449, 41 So. 868; McMinn v. Karter, 123 Ala. 502, 26 So. 649.

We are fully persuaded that this self-serving action on the part of Blumberg was taken in an effort to avoid an injunction, and the effect it might have upon him in the prosecution of his profession as a gambler.

Likewise, the trial court was in error, in holding that the complainant was not entitled to an injunction against the said Guardian Realty Company, for the failure of the complainant's evidence to show that this respondent had any knowledge or notice of the unlawful use that his premises were being put to by the tenant. No

such knowledge or notice was necessary, as we have indicated.

It follows, therefore, that the decree of the circuit court, denying the relief sought by the complainant, and in dismissing the bill, was erroneous. On the proof submitted, the court should have granted the relief prayed, and should have perpetually enjoined respondent Mose A. Blumberg from using, at any time, the said Suburban Hotel as a gambling resort, and requiring him to remove all the property or things, now on said premises, which were used by him in operating a gambling resort in said hotel. And the court should have granted, as prayed by the bill, a permanent injunction against the respondent Guardian Realty Company, requiring it to abate the nuisance charged in the bill, and perpetually enjoining it against future continuance of said nuisance, and requiring the said respondent, Guardian Realty Company, to keep its said premises, the Suburban Hotel, from becoming a public nuisance, in the future, as respects the matters charged in the bill, and further, in that respect, to observe its duty as owner of said property.

The decree of the circuit court is, therefore, reversed, and a decree here rendered as above indicated.

Lest, by our failure to say anything with reference to the court's action in permitting the respondent, Guardian Realty Company, to read in evidence two ex parte affidavits, on the final hearing of this cause, we might be understood as holding that such action of the court was without error, we deem it proper to point out that, in this ruling, there was, of course, manifest error. The view we have taken of the case, however, renders this error innocuous. With this evidence in or out, our conclusion would be the same. The cause, was, upon final hearing, at the time the ex parte affidavits were offered, and upon such hearing of a cause such ex parte affidavits are inadmissible. The opposite party has the right to cross examine the witness, whether the evidence is given ore tenus, or by deposition.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.