## Montgomery et al. v. Commonwealth ex rel. Dummit, Attorney General.

October 24, 1947.

Lawrence F. Speckman, Judge.

Brown & Eldred and Eli Brown, III, for appellants.

Eldon S. Dummit, Attorney General, and Frank A. Ropke and Charles E. Keller for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

The judgment enjoins the maintenance of a public nuisance at 2831-2833 South Fourth Street in Louisville, known as "Montgomery's Cafe." It is of the

same class as others in the series of judgments affirmed today. Some of the same defendants, who seem to have been employees or "hangers-on" at all of these places, are parties to this suit. Nathaniel Montgomery, alias Skip Montgomery, is the owner and operator.

The real estate is owned by Anna Spanier McFerran, Edgar Lee McFerran, Callie Spanier Miller and John E. Miller. These owners make the special appeal that the judgment is erroneous as to them because of the absence of proof of their knowledge or consent to the gambling activities on their premises. The provision in the judgment against permitting those illegal acts to be conducted on the property is applicable to them and not the provision enjoining the operations.

Montgomery held a lease on the first floor of the room designated as 2833 South Fourth Street. So far as the injunction covers the entire premises it is harmless, if not altogether proper, in this case, as we held in Miller v. Commonwealth, 306 Ky. 269, 206 S. W. 2d 958.

There is no proof of actual knowledge on the part of the owners of the property as to what it has been used for. But the circumstantial evidence is great. In a period of less than seven years there were thirty-seven raids or arests for gambling there, besides calls to police for shootings, cuttings and fights. Many of these were given newspaper notoriety. The evil reputation of the place was well established. Common sense recognition of this notoriety and of the relation of landlord and tenant justifies the conclusion of the court that the owners did know what was going on in their property. It is significant that there was no evidence in denial.

In considering Louisville & Nashville R. Co. v. Laswell, 299 Ky. 799, 187 S. W. 2d 732, offered by defendants to support their contention that a landlord is not liable for a nuisance created by his tenant, the chancellor quoted the familiar law that, "A person is liable if he knowingly permits the creation or maintenance of a nuisance on his premises," and that the landlord must see that a nuisance created by his lessee is abated. He said:

"In line with the above reasoning, which we believe to be sound, we hold that in actual practice there is no

distinction in cases of this character between those owners who prior to the action had either actual knowledge of what was going on or by reason of their relationship to the persons were charged with knowledge and those owners who had no prior knowledge nor were they charged with knowledge. The simple fact is that all of them now know that their property has been and is now being used for purposes of violating the gambling statutes, and there can be no serious objection to abate and prevent the nuisance from continuing in the future.''

The Laswell case is an action for damages to land caused by a sand bar, claimed to have been formed by a railroad culvert. The case recognizes the rule that a landlord must see that a nuisance created by his tenant or licensee is abated.

In a case of tort, the liability, if any, is for what has been done on or with the property in the past. A suit in equity to abate a nuisance looks to the future. There is a material difference in responsibility and legal accountability. For past acts, knowledge is a controlling factor. For the future, we join the chancellor, Judge Speckman, in his rhetorical question, ''What justification in equity can the landlord have for permitting his property to be used for an unlawful purpose after having actual knowledge of its use?''

The weight of modern authority is that in a suit to enjoin a nuisance, it is not necessary to prove knowledge of the owner that his property is being used for a common nuisance. This rests on the common law, or sometimes on a statute, that the owner of premises is under a duty and has the primary obligation to keep his premises from becoming a nuisance. The Supreme Court of Alabama in State ex rel. Bailes (a solicitor of one of the circuit court districts) v. Guardian Realty Co., 237 Ala. 201, 186 So. 168, 121 A. L. R. 634, held that a corporation owning a hotel building, in which a nuisance of this kind was being maintained, should be perpetually enjoined against permitting its continuance although the officers of the corporation had no knowledge of the property having been so used. The court adopted with approval, as we do here, portions of the opinion of the Texas Supreme Court, styled Moore v.

State, 107 Tex. 490, 181 S. W. 438, 440. We quote part of it, namely:

"In such a case it is difficult to perceive how the right is affected by the owner's previous want of knowledge that the premises constitute such a nuisance. No immunity from injunction against such use of the premises is created by the want of such knowledge on the owner's part. The right to an injunction arises upon proof of the nuisance, regardless of his knowledge, or want of knowledge, that his premises are being unlawfully used. It is not affected by the question of the owner's knowledge, and, of course, is not defeated by his want of knowledge. If it is established that the nuisance exists, it then becomes simply a question of against whom the writ of injunction may properly run. * * *

"The owner's ignorance of the past unlawful use of his property does not relieve him of responsibility for its future use. He cannot say that because he was unaware that it had become a public nuisance, the nuisance may not be restrained and its further existence prevented by an injunction running directly against him, requiring the exercise of his authority as the owner of the property, primarily charged with the duty, inhering in his ownership, of seeing that it is not devoted to unlawful purposes. If in such cases the owner may relegate the proceeding to an action simply against those directly responsible for the nuisance and others concerned with them, it means that they alone are charged with that duty and he is exempt from it. But the law does not protect persons in the ownership of property, and then permit them to absolve themselves from all obligation in respect to the uses to which it is applied. Ownership carries its duties as well as its benefits. One of them is to keep the property from a use which is unlawful. It is imposed upon the owner because that is where it ought to rest. It is an element of his right of control over the property; his authority to direct the purposes for which it may be used."

The annotations, 121 A. L. R. 642, show this principle to be generally applied.

The landlords in the case at bar were parties to the suit and learned in a most positive and certain way that their property had been perverted to illegal uses

to such an extent that it constituted a nuisance, debauching morals and breeding depravity—certainly detrimental to the public welfare. It was notorious. It would seem that a sense of public responsibility and good citizenship would have induced these landlords to join the Commonwealth in its efforts to stop the nuisance and cleanse their property from what is indirectly referred to in the brief filed for them and all of the defendants in this series of cases as "cesspools."

A suit of this character is basically an action in rem, although it must operate in personam. It is to be remembered that the proceeding does not impose a penalty for what has been done in or with the property; nor does it undertake to padlock it or to forfeit the property permanently. The judgment operates prospectively. The owners have complete liberty to use their property through their tenants for any decent and legitimate purpose. They are only required to see that it ceases to be now and shall not again be converted into the nuisance.

The judgment is affirmed.