The appellant was indicted for murder in the first degree. A jury found him guilty of murder in the second degree and fixed his punishment at sixty-five years and one day imprisonment in the penitentiary.
On Wednesday, the 20th of October, 1976, the battered and bloody body of Mrs. "Bobbie" Rudene Edwards was found in her home. The house had been ransacked and blood was splattered in several rooms. Mrs. Edwards was sixty-one years old. She died from massive brain damage and hemorrhage resulting from multiple blows. So vicious and brutal was the attack upon Mrs. Edwards that her mid-brain was almost completely torn in half. A broken rifle stock was found near the victim.
In January of 1976, Mrs. Edwards had received $66,450.00 from the United States Government in settlement of a civil lawsuit. Accounts of her victory were reported in the local newspaper. Apparently, this was the motive for the robbery of Mrs. Edwards.
The appellant was sixteen years old when he murdered Mrs. Edwards. He was convicted upon the testimony of prostitutes, dope users and thieves — all friends and former companions. An ex-felon testified that the appellant stated on three different occasions that he beat Miss Bobbie's head in because he didn't want to leave any witnesses. One of these conversations was tape recorded by the Phenix City Police Department. A prostitute testified that the appellant also admitted to her that he killed Mrs. Edwards. A pistol identified as having been often carried by the appellant was found in a creek near Mrs. Edwards' house in Phenix City. The appellant lived in Columbus, Georgia.
We need not detail the circumstances surrounding this most violent murder and the facts implicating the appellant. The evidence presented by the state was sufficient to justify the submission of the case to the jury and the verdict returned.
 I
The appellant's defense was that he and his father were in Mississippi at the time of the murder. The manager of a Day's Inn Motel in Jackson, Mississippi testified that his records reflected that a Mr. E.A. Austin (the father of the appellant) *Page 42 
and "one person under the age of eighteen" registered on the evening of October 19, 1976. A cash refund voucher signed by Mr. Austin revealed that a one dollar key deposit was returned to him on October 20, 1976. Both the registration card and the cash refund voucher were admitted into evidence.
Dr. Victor Platz testified that on the morning of October 20, 1976, he saw the father of the appellant in the Rankin General Hospital Emergency Room in Jackson, Mississippi. Dr. Platz wrote Mr. Austin a prescription and was introduced to Mr. Austin's son. The doctor testified that to the best of his memory, the young man with Mr. Austin was the appellant.
In an effort to further corroborate his alibi, the appellant attempted to introduce two cash refund slips and a motel registration card to show his presence in Mississippi on October 20th.
Mrs. Barbara Austin, the stepmother of the appellant, went to Mississippi after the appellant had been charged with murder. She testified that she obtained photocopies of cash refund slips from Sears, Roebuck and Co. and from McRae's bearing the signature of the appellant and dated October 20th. The appellant identified his signature on the receipts. Mrs. Austin testified that her husband and the appellant had gone to Mississippi to "fool around" which she defined as stealing merchandise from stores and then exchanging it for cash.
Mrs. Austin further testified that she obtained a verified statement from Kathryn G. Johnson stating that Mr. Austin and his son stayed in her motel on the night of October 20, 1976. Defense counsel attempted to introduce into evidence a certified copy of the registration card from Katherine Court in Meridian, Mississippi.
Certainly these documents were material corroboration of the alibi defense presented by the appellant. However they were not due to be admitted into evidence because they were not properly authenticated.
The cash refund receipts and the motel registration card are business records. Rule 44, Alabama Rules of Civil Procedure, and Title 7, § 415, Code of Alabama 1940, govern the admissibility of "any writing or record, . . ., made as a memorandum of any act, transaction, occurrence, or event".
In order to properly authenticate a business record, any witness (frequently the custodian of the record) must testify:
 "that the document now exhibited to him is a record of the business; that he knows the method (i.e., the standard operating procedure) used in the business of making records of the kind now exhibited to him; and that it was the regular practice of the business to make records of such kind and to make them at the time of the event recorded or within such specified period thereafter as could be found by the trier of fact to be reasonable."
 Gamble, McElroy's Alabama Evidence, 3rd Ed., § 254.01 (3), p. 547.
The only predicate laid for the admission of these (copies of) records was that the appellant's stepmother obtained them in Mississippi and that the signature on the two cash refund vouchers were the appellant's. The cash refund vouchers and the motel registration card were not properly authenticated and were not due to be admitted into evidence. Sloan v. Sloan, Tex.Civ.App., 32 S.W.2d 513 (1930); Hartshorn v. Hartshorn,67 Okla. 45, 168 P. 822 (1917).
The verified statement of Mrs. Johnson was also properly excluded from evidence. As a general rule, an affidavit is not admissible for the purpose of proving the truth of the matter stated in it because the affidavit is hearsay. Bailes v.Guardian Realty Co., 237 Ala. 201, 186 So. 168 (1939); Brown v.Steele, 14 Ala. 63 (1848). Title 15, §§ 297-300 governs the procedure for taking depositions in a criminal case. These provisions should have been followed.
 II
The appellant asserts error in the admission of a tape recording of a conversation between the appellant and a witness for the state because the state did not show (1) that the "mechanical transcription device" was *Page 43 
capable of taking testimony or (2) the authenticity and correctness of the recording. Additionally (3) the appellant objects to the use of amplification equipment to allow the jury to hear the tape.
Before the tape recording was offered into evidence, Lamar Jackson testified to the substance of the conversation that was recorded. At this time, defense counsel demanded that the jury be allowed to hear the "best evidence" of the conversation which was the tape itself as opposed to Jackson's testimony. Yet, when the state attempted to introduce the tape into evidence defense counsel made general objection. The trial court then had the tape played out of the hearing of the jury. After the tape was played to the court defense counsel stated that he had no objection to the jury hearing the best evidence which would be the tape itself. However counsel objected to the use of any "amplification equipment" other than the machine on which the tape was recorded. When it became obvious that the trial judge was going to permit the use of the amplification equipment defense counsel objected to the admission of the tape.
The admission of the tape recording was proper. Jackson had previously testified to the conversation. Where it is proper to testify about an oral conversation, a tape recording of that conversation is admissible as probative and corroborative of the truth of the testimony. Nixon v. Sirica, 159 U.S.App.D.C. 58, 487 F.2d 700 (1973). The testimony of the Phenix City police officer who arranged for the recording to be made by Jackson and Jackson's own testimony adequately and substantially supplied the predicate necessary for the authentication and introduction of the tape. Jackson testified as to when the tape recording was made, the circumstances surrounding the event and the actual content of the conversation. Detective Alsobrook of the Phenix City Police Department testified to the placement of the recording machine in the automobile used by Jackson and the manner in which it could be operated by Jackson. He further testified that he had used the recording machine on previous occasions, was familiar with recordings and transcribing devices, and was able to identify the voices on the tape recording. The tape was in the same condition as it was when removed from the automobile and had remained in the continuous care, custody and control of Detective Alsobrook. Sexton v. State, Ala.Cr.App.,346 So.2d 1177, cert. denied, Ala., 346 So.2d 1180 (1977); C.P. Robbins Associates v. Stevens, 53 Ala. App. 432, 301 So.2d 196 (1974);Wright v. State, 38 Ala. App. 64, 79 So.2d 66 (1954). The fact that a recording is partially inaudible in those portions likely to contain material statements does not require its exclusion from evidence unless the recording is the only evidence offered as to the statements. Wright, supra; Bouldenv. State, 278 Ala. 437, 179 So.2d 20 (1965).
While the appellant argued against and objected to the use of the amplification equipment he failed to assign any ground for such objection. We do not know what amplification equipment was employed at trial. The recorder used to make the tape was small enough to fit inside the glove compartment of an automobile. Officer Alsobrook testified that it would be "rough" for a jury to hear the tape if it was played on that machine. He also testified that the original recording machine was damaged and had become inoperative. In view of this testimony and the lack of specific objection informing this court and the trial court of the reason for the objection to the "amplification equipment" we hold that the action of the trial court was proper. Where a tape recording is admissible, the jury should be permitted to hear the contents of that tape as clearly as possible. Where the use of amplification equipment will not result in a faulty reproduction of what is actually contained on a tape recording no objection lies to the use of different amplification equipment from that on which the tape was originally produced.
 III
In closing argument the Assistant District Attorney stated that the appellant *Page 44 
had once said, "Well, all I wanted to know was where the damn money was at, and she wouldn't tell me, so I hit her". There was no evidence of this specific statement being made by the appellant. However there was testimony that he said "Well, if it would have been there what was supposed to have been there I wouldn't of had to done it".
The Deputy District Attorney withdrew the statement when defense counsel objected. Defense counsel then moved for a mistrial. The trial court instructed the jury to only consider what they heard to be the evidence and to disregard anything said by any attorney which conflicted with that. At the beginning of the trial the court had instructed the jury to disregard "any remark, any argument, or any expression made by an attorney which you as the jury do not find to be supported by the evidence".
Each case of this character must be decided on its own merits. In view of the evidence actually presented the statements by the Assistant District Attorney were of such a character as to be eradicable by the action taken by the trial judge. Therefore the appellant's motion for a mistrial was properly denied. Allred v. State, 291 Ala. 34, 277 So.2d 339
(1973).
We have responded to the arguments in appellant's brief. Additionally we have searched the record for error and have found none. Therefore the judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.