## WILLIAM MAHONEY *vs.* JOHN LIBBEY & others.

Suffolk.   Nov. 15, 16, 1876. — June 28, 1877.   AMES, LORD & SOULE, JJ., absent.

In an action for personal injuries caused by the falling of the defendant's wall, there was evidence that the defendant's building and a building upon the adjoining estate, the side walls of which were very near but distinct from each other, were destroyed by fire; that the two side walls remained standing to a level with the street, with rubbish piled against and to the top of each; that about six months afterwards, as the plaintiff with others had nearly removed the wall upon the adjoining estate, the defendant's wall fell, causing the injuries. There was no evidence that the defendant's wall was dangerous or could have fallen while both buildings stood, or while both walls remained in the condition in which they were left by the fire, or that the defendant had notice, or was bound to know, that the wall on the adjoining estate had been or was about to be removed. *Held*, that the action could not be maintained.

TORT for personal injuries sustained by the plaintiff by the falling of a wall upon him.

At the trial in this court, before *Lord*, J., the plaintiff offered evidence tending to show that the estate upon which the wall fell, and the estate upon which it had stood, were situate on Federal Street, adjoining each other; that the buildings on them had been burned in the great fire of November 9, 1872, which swept over both sides of Federal Street; that the fire left the walls between these estates, running from front to rear, about on a level with the street, being a few feet higher at the front and rear ends than in the middle, and being from eight to fourteen feet in height from the cellar floor of the estate on which the wall fell; that the cellars on both estates were filled with rubbish, coming up against the walls to the tops thereof; that in May, 1873, the estate adjoining the defendant's estate was purchased by James Tucker & Co., and one McCarthy agreed to take down the remaining walls on the estate, clean the bricks,

and remove the useless rubbish within a given time, and the plaintiff testified that he and three others agreed with McCarthy to clean all the bricks, and, in doing so, occupied different places on the cellar floor, which was of plank, near the bricks to be cleaned.

McCarthy testified that when he commenced work, under his contract, on the Tucker wall, both the cellars were full of rubbish up to the tops of both walls; that he supposed there was but one wall between the estates, as the upper courses of brick were loose and covered with rubbish, and there were large quantities of brick and rubbish on both estates; that upon removing all the loose brick, which consisted of one or two courses, he found two entirely separate and distinct walls, one or more inches apart, the wall standing on the defendant's estate being eight inches, and that on the Tucker estate twelve inches thick; that he then proceeded to take down the Tucker wall carefully by courses, in such a way as to prevent injury to the brick, which were to be used again, and that in doing this he applied no force whatever to the defendants' wall; that he was at work in taking down this wall parts of several days; that he worked on this wall the day preceding the accident; and that before or about noon of that day he had taken down all of it except a few courses in the rear, and that this was all the work done on the wall before the accident; that before the accident all the rubbish had been removed from the Tucker side of the defendants' wall, and no brick of any consequence remained on that side, and the Tucker wall had been taken down as low as the cellar floor; that on the morning of the accident he was standing near the defendants' wall, within twenty minutes of its fall, when he was called off, and went into the street, where he saw the wall as it fell; that it went over suddenly, like a board fence, burying and causing the death of two of the men, and partially burying the plaintiff; that he shouted to the men when he first saw the wall start, but they had not time to get clear; that while at work on the Tucker wall, and down to the time of the fall of the defendants' wall, he saw no indications that the latter wall was not safe, and saw no cracks in it; that it appeared straight, and although he knew that the rubbish in the cellar on the defendants' estate came up to a level with this wall, he supposed it had settled before that time to its bearings.

The plaintiff testified, that he and the other men with him, engaged in cleaning the brick, commenced work about seven o'clock on the morning of the accident, and that they were seated on the cellar floor of the Tucker estate, within a few feet of the wall on the defendants' estate, at work cleaning the brick which had been taken from the Tucker wall; that he saw nothing in the defendants' wall to indicate that it was not safe, and that he had no suspicions that it was not so; that he knew that there was rubbish back of this wall, reaching to the top; that he heard the shout and started, but that the wall caught him before he could get clear.

The plaintiff's evidence tended to show that nothing had been done to either estate, but that they had remained as they were left by the fire, until and except what was done on the Tucker estate under the McCarthy contract.

This was all the evidence offered by the plaintiff, except such as related to the nature and extent of his injuries. The judge was of opinion that this evidence was not sufficient to entitle the plaintiff to maintain his action, and directed a verdict for the defendants, and reported the case for the determination of the full court upon the question whether the plaintiff could maintain his action. If the plaintiff could maintain his action upon the foregoing evidence, the verdict was to be set aside and a new trial ordered; otherwise, judgment on the verdict.

*D. Thaxter & F. Bartlett*, for the plaintiff.

*C. A. Welch*, for the defendants.

GRAY, C. J. The plaintiff relies on the duty of every owner of land to keep the buildings or structures thereon in such a condition that they shall not, by falling or otherwise, cause injury to property or persons lawfully upon adjoining land.

But assuming that this duty is absolute while the structures are in the condition in which the owner has put them, or knows or is bound to know them to be, yet, when he has been guilty of no negligence, and the condition of the structures has been changed, so as to render them injurious or dangerous, by *vis major*, or the act of a third person, which the owner had no reason to anticipate, he cannot be held liable for the injury, or bound to make the structures safe, until he has had a reasonable time, after they have so become dangerous, to take the necessary

precaution. *Nichols* v. *Marsland*, L. R. 10 Ex. 255, and 2 Ex. D. 1. *Gray* v. *Harris*, 107 Mass. 492.

In the case at bar, there was no evidence that the defendants' wall was dangerous or could have fallen while both buildings stood, or while both walls remained in the condition in which they were left by the fire, or that the defendants had notice, or were bound to know, that the wall on the adjoining estate had been or was about to be removed; and the full court concurs with the justice who presided at the trial in the opinion that the evidence introduced was insufficient to support the action.

*Judgment on the verdict for the defendants.*