JOHN E. GREEN *vs.* J. WINTHROP NIGHTINGALE.

Suffolk.    January 9, 1912. — February 29, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DECOURCY, JJ.

*Negligence,* Of one controlling real estate.

In an action for injuries sustained from being struck by a board falling from the
roof of an unoccupied house owned and controlled by the defendant while
the plaintiff was walking near it on the highway, where there is evidence of the
dilapidated condition of the house and of the rottenness of the board that fell
from the roof upon the plaintiff and also of the defendant's failure to attend to
the house or to make any repairs upon it, the question of the negligence of the
defendant is for the jury.

In an action for an injury to a traveller upon a highway by reason of a rotten board
falling upon him from the roof of an unoccupied and neglected house owned and
controlled by the defendant, it is proper for the presiding judge to refuse to
make a ruling which correctly states the obligation of a landlord to a tenant
but has no application to the case on trial.

TORT for personal injuries from being struck by a board which
fell from the roof of an unoccupied dwelling house on Newbern
Street at the corner of Sterling Street in Boston owned and con-
trolled by the defendant, while the plaintiff was travelling on the
highway shortly after twelve o'clock, noon, on February 10,
1909.   Writ in the Municipal Court of the City of Boston dated
February 12, 1909.

On appeal to the Superior Court the case was tried before
*Fox,* J.   The jury took a view of the house.   The boards which
fell from the building when the plaintiff was struck were picked
up by the plaintiff after his injury and were spread on the floor
of the court room in front of the jury.   The plaintiff, who was a
carpenter and a general all round man, was going to dinner when
the accident happened.   He testified, among other things, that the
day of the accident was stormy, that it was raining and the wind
was blowing, that he was close to the house when struck, that
he had passed by the house before the accident, but not very
frequently; that it was in bad condition, dilapidated, an old build-
ing, that he had noticed it for about four years, that no repairs,
to his knowledge, had been made on the house during that time,

that he had never seen the defendant around the house before the accident; that he should say these boards were in a very rotten condition, twenty-five or thirty, or perhaps forty years old, and perhaps older. The plaintiff further testified that it was pretty hard to tell where the nails went in these boards because they were all rotten, that in his opinion the boards fell because the nails were all rotted out and would not hold the weight of the boards and that in his opinion an examination of the building by an ordinary caretaker would have disclosed the dangerous condition of those boards. A witness, whose business was real estate and who took care of buildings near the one in question, testified that he had known the defendant's building for seven or eight years, that it last was occupied three or four years before the trial, and that since it had been unoccupied it was "gradually wasting away." There was evidence that the windows of the building were boarded up, that the doors were boarded up and broken and that the roof looked in bad condition around the sides.

Other evidence is stated in the opinion.

The three rulings which were requested by the defendant and refused by the judge are stated in the opinion. The portion of the judge's charge referred to in the opinion as covering the third ruling requested by the defendant was as follows:

"Now, suppose we have the case of shingles blowing off the roof of the building in a gale of wind, that is one case, and one of them hitting a passer-by, then take another case, there is a hanging, a heavy hanging sign, hanging directly over the sidewalk supported by iron brackets, that is another case, and you as men of common sense can see that there is a difference in those two cases. You may say that as a man of ordinary care the owner should not be expected as long as his roof is not leaking, not disturbing the tenants, he should not be expected to go over that roof and give it daily or weekly, or even monthly inspection for fear that some shingles might be loose and might fall in a gale of wind on the passerby, that degree of caution shouldn't be exacted from the owner, but on the other hand suppose you have a heavy wooden sign hanging over the sidewalk supported by two iron bolts, if that sign falls, it is certain to hurt somebody, if that somebody happens to be under it, and there are only two supports to it. Now you may say that ordinary care requires that the

owner of that building should look at that sign occasionally to see whether it is held, whether it is firmly placed or not. After all the question is for you to determine, having regard to the circumstances, whether ordinary care was used by the owner of this building to protect, to prevent injury to the public. The question whether he allowed that building to be dilapidated and unsuitable for the purposes of letting is not of any consequence unless you find that that degree of dilapidation endangers the public walking upon the public streets. That is the question for you to determine. Now there is this testimony with regard to the boys. What shall we say about the boys? Well, if it is perfectly clear that if that building was in a reasonably safe condition till the boys loosened some of the boards and if the owner, — if the accident happened because the boys loosened some of those boards and before the owner learned of it, or by the exercise of reasonable care could have learned of it, then he is not responsible. The question is whether you can impute to him or to any of his servants as a cause of this accident, lack of the use of ordinary care in protecting the public from injury by the falling of boards from his building."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. A. Abbott*, for the defendant.

*P. Daly*, for the plaintiff.

RUGG, C. J. This is an action of tort in which the plaintiff seeks to recover compensation for injuries sustained by him while a traveller upon a public way from boards falling from a house owned by the defendant. The charge of the Superior Court was in general in accordance with *Ainsworth* v. *Lakin*, 180 Mass. 397, portions of the opinion being read to the jury. The only questions arise from the refusal of the trial judge to give rulings requested.

1. The request to direct a verdict for the defendant was denied rightly. Evidence as to the dilapidated appearance of the house, the falling of the boards and their condition, the lack of attention of the defendant to the house and all the other attendant facts raised a question for the jury as to the negligence of the defendant.

2. While the request to the effect that if there was a hidden defect in the board which caused the injury or in its attachment

to the building it must appear that the defendant either knew or ought to have known of the existing danger, is a correct statement of the obligation of a landlord to a tenant (*Shute* v. *Bills,* 191 Mass. 433), there was nothing in the case at bar which called for the application of this rule.

3. There was evidence tending to show that on a Saturday afternoon early in February, 1909, the accident having occurred on February 10, some boys were seen on the roof of the defendant's house stripping up boards such as injured the plaintiff and that at the hour of the accident the wind was blowing a gale.

In this connection the request was made to instruct the jury that if the condition of a structure has been rendered dangerous by *vis major* or the act of a third person, which the owner had no reason to anticipate, he cannot be held liable for the injury or be bound to make the structure safe until he has had a reasonable time after it has become dangerous to take necessary precautions to prevent injury. This is the law. *Mahoney* v. *Libbey,* 123 Mass. 20. There was evidence to which it was applicable. The rule given upon this branch of the case, although not in the language of the request, stated the principle with sufficient amplification and illustration to protect the rights of the defendant. The *vis major* upon which the defendant relied was the gale operating directly and immediately to cause the injury and not rendering the building so unsafe as to require repair. Therefore, the duty resting upon the defendant was one of previous reasonable inspection, so far as common prudence under all the circumstances required it, to see that the condition of the roof was such as not likely to cause harm to passers-by. As to the intervening tortious act of third persons causing the dangerous condition, the rule was stated with accuracy.

*Exceptions overruled.*