(113 So. 50)

### SLOSS SHEFFIELD STEEL & IRON CO. v. NANCE. (8 Div. 940.)

Supreme Court of Alabama. May 19, 1927.

**1. Waters and water courses ⬤⟩118—Filling channel on lower lands, causing water to overflow on plaintiff's upper lands, gave plaintiff cause of action.**

In suit for damages for obstructing natural flow of surface waters from lands of plaintiff lying above defendant's lands, filling up of channel on defendant's land so as to obstruct flow of water, causing water to remain on plaintiff's land, making it unfit for cultivation, gave plaintiff cause of action.

**2. Waters and water courses ⬤⟩118—Embankment on defendant's land, causing water to overflow on upper lands of plaintiff, gave plaintiff cause of action.**

Filling up of ditch on upper lands of plaintiff by natural processes, due to embankment constructed on lower lands of defendant, causing plaintiff's lands to be untillable, gave plaintiff cause of action.

**3. Waters and water courses ⬤⟩118—Hindering waterflow or raising water level, causing overflow on upper lands, held breach of servitude for natural drainage.**

Rule that lower lands are subject to servitude for natural drainage of higher lands *held* breached by owner of lower lands, hindering flow of water or raising water level in soil by near contact to standing water so as to render upper lands wet and untillable.

**4. Waters and water courses ⬤⟩118—Liability of defendant purchasing lower lands for overflow on upper lands held dependent on negligent maintenance of conditions resulting in damage.**

Liability of owner of lower lands for damages resulting from overflow on upper lands, caused by rise in water level in channel on lower lands or obstruction thereon, *held* dependent on negligence or failure of duty in maintaining condition on lower lands after purchase by defendant.

**5. Waters and water courses ⬤⟩118—Purchaser of lower lands, with notice of conditions causing overflow on upper lands, should change conditions to allow natural flow of water.**

Purchaser of lower lands, with notice that embankment caused channel on his land to fill up and overflow on upper lands, was under duty to put his land in condition to allow natural flow of water to be resumed.

**6. Nuisance ⬤⟩10—Knowingly maintaining private nuisance created by predecessor is actionable.**

Maintenance of private nuisance created by predecessor in title would be actionable, if done with knowledge thereof.

**7. Waters and water courses ⬤⟩118—Defendant, if not notified of conditions created by predecessor, causing overflow on plaintiff's land, would not be liable.**

In suit for damages for obstructing natural flow of surface waters from upper lands of plaintiff, holder of lower lands would not be liable for conditions causing overflow created by his predecessor in title, if he did not have such notice of conditions as would impose on him duty to remedy same.

**8. Limitation of actions ⬤⟩32(3)—Not ten-year but one-year, statute of limitations governs suit for damages for obstructing natural flow of surface waters.**

Suit to recover damages for obstructing natural flow of surface waters from lands of plaintiff, causing them to remain untillable, *held* not subject to plea of statute of limitations of ten years, which applies to private nuisance per se acquiesced in for ten years, but one-year statute applies.

**9. Limitation of actions ⬤⟩55(7)—As to recurring injury due to manner of obstruction causing overflow of water, limitations run from date of injury.**

Ten-year period of limitations does not apply to recurring or increasing injury due to manner of maintaining obstruction, causing overflow of water, but one-year period of limitations runs from date of injury sued for.

Appeal from Circuit Court, Franklin County; Chas. P. Almon, Judge.

Action by Mollie G. Nance against the Sloss Sheffield Steel & Iron Company for damages caused by impounding water. From a judgment for plaintiff, defendant appeals. Trans-

---

ferred from Court of Appeals under Code 1923, § 7326. Reversed and remanded.

Williams & Chenault, of Russellville, and Bradley, Baldwin, All & White, of Birmingham, for appellant.

The rendition of judgment against the defendant was unauthorized by the evidence and the law applicable to the case. The allegations and proof do not correspond, and the plea of the statute of limitation of one year was proven. Stouts Mountain Coal Co. v. Ballard, 195 Ala. 283, 70 So. 172; A. G. S. v. McEniry, 200 Ala. 200, 75 So. 958; T. C. I. Co. v. Bunn, 202 Ala. 22, 79 So. 360; Sloss Co. v. Morgan, 181 Ala. 587, 61 So. 283; Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799.

Key & Key, of Russellville, and Kirk & Rather, of Tuscumbia, for appellee.

The statute of limitations commences to run from the time the injury occurs. S. A. & M. R. Co. v. Buford, 106 Ala. 313, 17 So. 395. One who wrongfully causes water to flow upon another's land, which water would not flow there naturally, creates a nuisance. 29 Cyc. 1178. One may acquire a right to maintain a dam, the effect of which is injurious to others, by prescription; but the manner and extent of the use during the period of prescription and afterwards limits the extent to which the privilege is available after the right has been fully vested. Cobia v. Ellis, 149 Ala. 108, 42 So. 751.

BOULDIN, J. The suit is to recover damages for obstructing the natural flow of surface waters from the lands of the plaintiff, causing them to remain wet and unfit for cultivation.

The plaintiff and defendant own and control adjoining lands; the defendant's lying below, and servient to, the lands of plaintiff for the drainage of surface waters.

The injury is laid to impounding waters by an embankment creating a pond on defendant's land.

Count 1 charges that defendant maintained such embankment; that during the winter and spring of 1924 defendant permitted surface water to fill the pond up to or near the boundary of plaintiff's land, "thereby obstructing the natural flow of the surface water falling on plaintiff's land, and causing same to accumulate and flow back on plaintiff's said land," resulting in the injury.

Count 2 charges the embankment was constructed by defendant or the party under whom it acquired title 20 years or more before bringing the suit, and now maintained by defendant. Like count 1, the injury is laid to the collection of water in the pond in 1924 in such quantities as to obstruct the flow of surface water and cause it to flow back and stand upon plaintiff's land.

The evidence goes to the effect that a railroad embankment first impounded a pond on the lands now owned by defendant, and about 1912 a mining company, defendant's predecessor in title, constructed a wing dam, raising the level of the pond, and providing a spillway over the new construction; that defendant acquired the property, and took possession June 1, 1923; that at normal stages the upper end of the pond is about a quarter of a mile from the lower end of plaintiff's land.

There is some evidence that by heavy rains of the spring of 1924 the pond rose to about the line; but, as we construe the evidence, it is not claimed that the pond extended upon plaintiff's land, but the real injury was due to other conditions. Manifestly, until the water in the pond reached the level of plaintiff's lands, it could not, and did not, obstruct the flow of surface water. The complaint expressly limits the cause of action to the influence of the water in the pond, causing an obstruction or eddy, turning back or impounding surface water on plaintiff's land. The evidence does not support the finding of the court, sitting as a jury, for an injury of that sort.

[1] The real damage which plaintiff's evidence tends to support is this: That the water coming down through plaintiff's farm and over defendant's lands gathered naturally into a ditch or channel; that the water in the pond so eddied the water as it entered the pond during freshets as to cause settling and filling of this channel first on defendant's lands and progressively until it contributed to fill up the ditch on plaintiff's land, causing the water to break over on plaintiff's lands, spreading, washing the soil, depositing débris, and causing it to remain wet and unfit for cultivation. This filling of the channel, it is claimed, caused the break over to reach from year to year further up on plaintiff's premises, and extend the untillable zone; that specially heavy rains in 1924 worked greater injury than ever before.

The filling up of the channel, or raising the earth level where water entered the pond, whether in one channel or at many points, so that the flow was obstructed and water caused to remain on plaintiff's land, to her substantial injury, gave a cause of action.

[2, 3] Filling up the ditch on plaintiff's land by natural processes due to the obstruction, and so diverting the water before reaching the line, would be subject to the same rule. Causing her lands to remain wet and untillable, either by hindering the flow or raising the water level in the soil by near contact to standing water, was a breach of the all-prevailing law that the lower lands are subject to a servitude for the natural drainage of the higher.

[4] The liability of this defendant for the injury of 1924 would turn on negligence or failure of duty in maintaining the conditions on its premises after its purchase in 1923.

[5, 6] If it had notice that this embankment had caused a filling up of the natural channel on its land leading to like conditions on plaintiff's land, the duty would be upon it to put its own premises in condition to allow the natural flow to be resumed. To knowingly maintain a private nuisance created by its predecessor would be actionable. But, if it had no notice that the existing condition of the drains was due to the impounded water, it would not be responsible for injury resulting from filling up drains by its predecessor in title.

[7] If the variance between allegation and proof of the quo modo of the alleged injury could be treated as waived by failure to object to the evidence, it would still be insufficient to bind defendant for conditions created by its predecessor for failure to prove such notice as would impose on defendant the duty to remedy them.

[8] Neither the claim set up in the complaint nor the evidence was subject to the plea of the statute of limitations of ten years. It applies to private nuisances per se acquiesced in for ten years.

[9] Recurring or increasing injury due to the manner of maintaining the obstruction is not within the rule. The statute of limitations of one year runs from the date of the injury sued for. T. C. I. Co. v. Bunn, 202 Ala. 22, 79 So. 360; A. G. S. R. Co. v. McEniry, 200 Ala. 200, 75 So. 958; Stouts Mountain Coal Co. v. Ballard, 195 Ala. 283, 70 So. 172; S. A. & M. Ry. Co. v. Buford, 106 Ala. 313, 17 So. 395.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.