11 So.2d 833

**TENNESSEE COAL, IRON & R. CO. v. HARTLINE.**

6 Div. 57.

Supreme Court of Alabama.

Jan. 28, 1943.

Rehearing Denied Feb. 25, 1943.

Benners, Burr, McKamy & Forman, of Birmingham, for appellant.

Harsh, Harsh & Hare and Henry L. Jennings, all of Birmingham, for appellee.

THOMAS, Justice.

The complaint was against the Tennessee Coal, Iron & Railroad Company, a corporation, Birmingham Slag Company, a corporation, Dixie Carbide Company, H. S. Teal, Frank Gurley, alias Robert Gurley, Roy Jackson, alias Leroy Jackson, and John Doe Company. The plaintiff dismissed his case against all of the defendants except the Tennessee, Coal Iron & Railroad Company, hereinafter called the T. C. I., and the Birmingham Slag Company. The jury found for the Birmingham Slag Company and against the appellant.

The trial was upon Count B; the demurrer thereto was overruled and defendants pleaded in short by consent. The appellant T. C. I. assigns as error the overruling of its demurrer; the refusal to give the general affirmative charge; the admission in evidence of certain testimony over its objection, and the overruling of its motion for a new trial.

■ Appellee insists that the minute entry shows a general ruling upon all of the demurrers filed by the several defendants and hence it is insufficient to present for review the error complained of in the overruling of demurrer to Count B filed thereto and here assigned by the T. C. I. as error. [The reporter will set out the pertinent recitals of the judgment entry on the demurrers.] This specific recital shows that the ruling on demurrer was not within the pronouncements contained in Central of Georgia Railway Co. v. Ashley, 159 Ala. 145, 48 So. 981; Alabama Chemical Co. v. Niles, 156 Ala. 298, 47 So. 239. We hold the record shows a specific ruling on that demurrer to Count B by the T. C. I., and that the ruling here assigned as error is subject to review by this court. Liverpool & London & Globe Ins. Co. v. McCree, 210 Ala. 559, 98 So. 880; Alabama Power Co. v. Fergusen, 205 Ala. 204, 87 So. 796.

Thus we are brought to a consideration of the overruling of demurrer of the T. C. I. to Count B added by amendment and on which the trial was had. That count is an adoption of parts of count 1 and count A as added thereto and adopted in Count B.

Several grounds of demurrer that were overruled are: the complaint does not allege that the injury occurred as the result of the act of the defendants; that for aught appearing in the pleading, it is averred trespassers caused plaintiff's injury; that the defendants in charge or control of the premises knew, or by the exercise of reasonable diligence should have known, that said nuisance was being maintained upon said premises and that persons not upon said premises would likely or probably be injured thereby, is a conclusion of the pleader and does not sufficiently set forth the facts upon which such conclusion is rested; that for several months prior to the occasion of plaintiff's injury, blasting operations were conducted upon the premises, does not sufficiently aver that such operations were so conducted as to constitute a nuisance.

Further grounds of demurrer overruled are: It is not averred the defendants had notice that said alleged blasting operations were being conducted on the property, for that the averment that by the exercise of reasonable diligence defendants should have known that said blasting operations were being conducted on the premises, is not the equivalent of knowledge to the defendants; and for that it is averred that the blasting operations were conducted upon the premises by alleged unknown persons, does not state that such blasting operations constituted a nuisance that was known to defendants or that they created the same. Such, in effect, are the grounds of demurrer of the T. C. I., the overruling of which is assigned as reversible error.

The question for decision is, may the owner of the land, under the rule of imputed or constructive notice (in the absence of statute), be made liable for damages caused by a nuisance on his land, which he did not create or authorize to be continued thereon? Mobile & Montgomery Ry. Co. v. Felrath, 67 Ala. 189; Code 1940, T. 7, § 1081 et seq.

The count was as to all defendants indicated and no where distinguished between the owner, tenant or subtenants or licensee. It alleges that plaintiff's injury was "by reason of and as a proximate consequence of blasting operations then and there being carried on upon premises in charge or control of defendants at or near to-wit, Powell Avenue, between 9th and 10th Streets, in said City, * * *." The fair inference is that though the count does not charge in words that the facts averred constituted a nuisance, the natural implication of pleading that may here be indulged is that the facts as averred had the effect of declaring for a nuisance that resulted in injury to a pedestrian upon the public streets of the City of Birmingham. Adler & Co. v. Pruitt, 169 Ala. 213, 53 So. 315, 32 L.R.A., N.S., 889. The court so interpreted the count and charged the jury to that effect. Best Park & Amusement Co. v. Rollins, 192 Ala. 534, 68 So. 417, Ann.Cas.1917D. 929; City of Birmingham v. Whitfield, 29 Ala.App. 454, 197 So. 666.

It may be that we should seek for analogy in the duty imposed on the owner of real property in other circumstances, for example, in an attractive nuisance case. In Gandy v. Copeland, 204 Ala. 366, 86 So. 3, it is held:

"One may permit his land to be so used by others that they may reasonably presume that he will give notice of a change in conditions rendering such use unsafe, and if he places dangerous structures thereon which may be reasonably apprehended to be dangerous to those so using the land he is not exonerated from liability for their injuries by reason of fact that they were on land on other business than with owner or occupier.

"A mere trespasser upon the premises of another can claim from the owner no further duty than that traps or pitfalls may not be set or permitted in his way."

In Preston v. LaSalle Apts., 241 Ala. 540, 3 So.2d 411, it is said that the general duty imposed by law on the owner of premises is one must be reasonably sure that he is not inviting another into danger and that one must exercise ordinary care and prudence to render and to keep his premises in a reasonably safe condition for invitees. Prudential Ins. Co. v. Zeidler et al., 233 Ala. 328, 171 So. 634. This count does not declare for an invitee or for one injured by an attractive nuisance.

The rule for the abatement of a public nuisance is stated for the court by Mr. Justice Knight in State ex rel Bailes, Solicitor, v. Guardian Realty Co. et al., 237 Ala. 201, 205, 186 So. 168, 171, 121 A.L.R. 634, as follows:

"At common law the owner of premises was under the duty, and upon him rested a primary obligation, to keep his premises from becoming a public nuisance. Joyce on Nuisances, § 453. * * *

"This duty and obligation on the part of the owner spring from the maxim, 'So use your property as not to injure the rights of another.' "

To the same effect are the cases of Martin v. Blattner, 68 Iowa 286, 25 N.W. 131, 27 N.W. 244; City of New York v. McDevitt, 215 N.Y. 160, 109 N.E. 88, Ann.Cas. 1917A, 455.

What, then, is the rule for a nuisance created by blasting on premises of the owner? The rule given statement in 46 Corpus Juris, p. 693, § 105, is: "The blasting of rock on private premises does not of itself constitute a nuisance, but whether it is a nuisance or not is a question of fact depending upon the attending and surrounding circumstances. Blasting, without reference to the particular locality in which it is carried on, is not so intrinsically dangerous as to be ipso facto a nuisance. But the blasting of rocks may constitute a nuisance, as where it is injurious to neighboring property owners; * * *." See, also, Birmingham Realty Co. v. Thomason, 8 Ala.App. 535, 63 So. 65; Ex parte Birmingham Realty Co., 183 Ala. 444, 63 So. 67.

The same authority [46 C.J., p. 742, § 324] contains the text as to "notice" as follows: "It is a prerequisite to impose liability against a person who merely passively *continues a nuisance created by another* that he should have notice of the fact that he is maintaining a nuisance and be requested to remove or abate it, or at least that he should *have knowledge* of the existence of the nuisance. * * *."— [Italics supplied].

Such is the rule in this jurisdiction. Crommelin v. Coxe, 30 Ala. 318, 328, 68 Am.Dec. 120; Sloss-Sheffield Steel & Iron Co. v. Nance, 216 Ala. 237, 113 So. 50; Lamb v. Roberts, 196 Ala. 679, 680, 72 So. 309, L.R.A.1916F, 1018.

In Tedescki v. Berger, 150 Ala. 649, 43 So. 960, 11 L.R.A.,N.S., 1060, under a bill by authority of the state for injunction to abate a nuisance, it is held that "A bawdy house is a public nuisance, which one whose home is adjoining is entitled to abate by injunction." It is also held in this case: "A landlord cannot be made liable for the use of the premises in such a way by the tenant as to render the business there conducted a nuisance, where the premises were rented for a business which may be conducted in such a way as not to constitute a nuisance; but if he rents the building for the express purpose of having carried on therein a business which is per se a nuisance, he is liable."

There are many decisions in other jurisdictions to the effect that the bare fact of ownership of real property imposes no responsibility for a nuisance created and maintained thereon by other parties.

In Lamb v. Roberts, supra, 196 Ala. 679, 72 So. 309, 310, L.R.A.1916F, 1018, it is said: " * * * In the case of Crommelin v. Coxe, 30 Ala. 318, 68 Am.Dec. 120, a complaint similar to this was tested by demurrer; and the trial court in that case, as in this, held the count complained of sufficient, but on appeal the case was reversed, and the court, speaking through Stone, J., said: 'The second ground of demurrer is well taken. For continuing a

nuisance by omitting to reform it, a mere nonfeasance, where the continuance implies no action, we are satisfied no action can be maintained, unless the party owning the property have notice or knowledge of the hurtful tendency of the nuisance, or be requested to abate it. Penruddock's Case, Coke's Rep. 5th part, page 101; Beswick v. Cumden, Cro.Eliz. 520; Pierson v. Glean, 14 N.J.L. 36, 25 Am.Dec. 497; Loftin v. McLemore, 1 Stew. 133.' "

This case is largely rested on Judge Freeman's notes in 86 Am.St.Rep. 509, which read as follows:

"It has been said that it is not a general rule that the owner of premises is, as such responsible for a nuisance thereon. It is the occupier to whom such responsibility generally and prima facie attaches: See Ahern v. Steele, 115 N.Y. 203, 22 N.E. 193 [5 L.R.A. 449], 12 Am.St.Rep. 778. This is a statement of a coincidence rather than of a principle. The real basis of liability for the consequences flowing from a nuisance rests neither on the ownership nor the occupancy of the premises upon which it exists. The occupant, as such, is not answerable for the nuisance; neither is the owner, as such, answerable. *It is the one who creates a nuisance, or who knowingly continues it if created by another, that is answerable for the consequences. The bare fact of occupancy or of ownership imposes no responsibility.* The liability for a nuisance springs from the wrongful act of creating or continuing it, rather than from owning or occupying the premises. If the owner or occupier of property creates a nuisance thereon, he is liable, not because he owns or occupies the premises, but because he created the nuisance. And if the owner or the occupier of property continues a nuisance created thereon by others, he is liable, not because he owns or occupies the premises, but because he does not abate the nuisance.

"These principles are illustrated by the following cases: The owner of property is not liable for a nuisance created thereon by a stranger, without his knowledge or authority: Wolf v. Kilpatrick, 101 N.Y. 146, 4 N.E. 188, 54 Am.Rep. 672. See, too, Maenner v. Carroll, 46 Md. 193, 215; Gray v. Boston Gaslight Co., 114 Mass. 149, 19 Am.Rep. 324. * * *." [Italics supplied.]

■ In Joyce's "Law of Nuisances", § 476, p. 690, it is said: "The injurious consequences or nuisance complained of should be the natural, direct and proximate cause of defendant's acts to render him liable for maintaining a public nuisance, for *it is a good defense that the tortious act was committed by others or third parties;* and if the injurious results flow from acts done by others operating on the alleged nuisancer's acts as to produce such results, *then he is not liable.* Nor is he liable for nuisances resulting from other sources over which he has no control, although he may be liable when he consents to, or authorizes the erection of the nuisance by such third party. * * *."

This, in effect, is the pronouncement in Morgan-Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610; Louisville & N. R. Co. v. Coùrson, 234 Ala. 273, 277, 174 So. 474, on proximate cause when some independent agency has intervened and been the immediate cause of the injury.

Appellee cites many cases from other jurisdictions on the general question of liability. In each case the liability was based upon a relationship of the owner with third parties and out of which relationship the duty on the part of the owner to control the conduct of such party arose. In each case there was knowledge of the damnifying agency or act which was the proximate cause of injury. Such was the important fact on which liability rested in Wright-Nave Contracting Co. v. Alabama Fuel & Iron Co., 211 Ala. 89, 98 So. 728. The employer had superintendence of the work, was intrinsically dangerous work, and such caused the injury.

In the more recent case of Smith v. Alabama Water Service Co., 225 Ala. 510, 143 So. 893, 896, the proximate cause of an injury is dealt with, and it is observed by Mr. Justice Knight: " * * * it may be said that, however negligent a person may have been in some particular respect, he is liable only to those who may have been injured by reason of such negligence, as the proximate cause. Where some independent agency has intervened and been the immediate cause of the injury, the party guilty of negligence, in the first instance, is not responsible. Alexander v. Town of New Castle, 115 Ind. 51, 17 N.E. 200. Of course, this pronouncement must be and is subject to the very just and wise limitation that if, at the time of the original negligence, the act of the independent agency could have been foreseen, the causal chain is not broken. Morgan Hill Paving

Co. v. Fonville, supra [222 Ala. 120, 130 So. 807]. * * *" And that Justice further said: "We have not been cited to any authority, either of our own court or elsewhere, which would require that locking devices should be provided for meter boxes installed along the streets to protect the boxes from the illegal, or wanton, acts of third persons. Nor have we been cited to any authority which holds that public service corporations, engaged in business similar to the business conducted by the defendant, should anticipate illegal or wanton depredations of third persons."

■ In Adler & Co. et al. v. Pruitt, 169 Ala. 213, 223, 53 So. 315, 32 L.R.A.,N.S., 889, Mr. Justice Sayre writes that the mere fact of a defendants' ownership of real property, without other wrongful act on his part, was not the proximate cause of plaintiff's injury; that is, ordinarily a person is not liable for a nuisance caused or promoted on his property by others over whom he has no control, nor is one bound to obviate such a nuisance when the land was rented for a lawful purpose.

In 39 Am.Jur. p. 299, § 17, the rule of non-liability is thus stated: " * * * Ordinarily, a person is not civilly liable for a nuisance caused or promoted by others over whom he has no control; nor is one bound to go to expense or litigation to abate such a nuisance. Thus, a person is not liable where his property is, by the act of independent third parties, made the instrumentality of a nuisance, since their act is the proximate cause. [Southern R. Co. v. State, 130 Tenn. 261, 169 S.W. 1173, L.R.A.1915B, 766.] * * * * *."

■ The authorities are abundant that a tenant has the right of recovery of damages from third persons for injury by maintenance of a nuisance on the rented premises on account of the interruption of the enjoyment of his estate and the lessening of the value of the use of the term. Crommelin v. Coxe, 30 Ala. 318, 68 Am.Dec. 120; Zimmerman Mfg. Co. v. Daffin, 149 Ala. 380, 42 So. 858, 9 L.R.A.,N.S., 663, 123 Am. St. Rep. 58.

Analyzing the count as affecting the duty of defendants to plaintiff, it may be said to be as follows in averment: (1) Blasting operations were being carried on upon the premises so situated; (2) unknown persons engaged in salvage of scrap iron, brick and slag etc., were using blasting material in so operating; (3) defendants' knowledge that blasting operations were conducted on the premises by some one; (4) knowing that persons using the street were likely to be injured by an improper use of the property, and (5) negligently failing to prevent such blasting operations. Construing the pleading most strongly against the pleader, it will be observed that the pleader seeks to fasten liability upon the defendant-appellant for blasting operations conducted upon its premises by others than the owner or its tenant, without averring facts to show that defendant-appellant was connected therewith or had the right to interfere with such operations on said premises. Under this count blasting operations, innocent and lawful, conducted upon the premises by the defendants' tenant would subject the owner or its tenant to liability for any injury inflicted by unknown persons or persons using blasting material in their operations, though not authorized so to do by defendants. Carried to its logical conclusion, it is sought to be made the duty of appellant (owner) to prevent such blasting by its tenant, the Birmingham Slag Company, or by the City of Birmingham, regardless of how properly such blasting was being done or how free from negligence such operations were conducted.

There is no averment of unlawfulness or lack of due care with regard to such blasting theretofore being done. There is no allegation of previous harm or injury resulting from the operations of defendants' tenants of the property of which knowledge is charged. There is no averment that makes the situation of the property a nuisance per se. After all that may be said as to the allegations of good pleading as to duty in the premises, proximate damage through the effect of the count in question is to make the ownership of property so situated the foundation of liability, rather than its unlawful operation a nuisance. The court cannot look to the count as a matter of law and see that by improper blasting operations a nuisance was averred; and if so that it was the duty of appellant to abate the same or to prevent injury from its negligent creation, maintenance or use by third parties. Tedescki v. Berger, 150 Ala. 649, 43 So. 960, 11 L.R.A.,N.S., 1060; Pollan v. City of Dothan, 243 Ala. 99, 8 So. 2d 813.

■ We believe the rule of the cases to be, (1) that where a nuisance exists or is committed upon lands, the same may be abated by due process, though its creation,

existence or maintenance is not within the knowledge of the owner, his servants, agents or employees acting within the line and scope of their authority; (2) that such owner may not be subject to civil liability for such nuisance not created or maintained by him, his agents, servants or employees, and of which such owner, agents or employees, within the line and scope of their authority, have no knowledge. This is the effect of Judge Freeman's notes in 86 Am. St.Rep. 509, hereinbefore set out. See Crommelin v. Coxe, supra; Southern Ry. Co. v. Plott, 131 Ala. 312, 318, 31 So. 33; Sloss-Sheffield S. & I. Co. v. Nance, 216 Ala. 237, 239, 113 So. 50.

Where a nuisance is created on land by a person other than the owner and the owner was not instrumental in the causing of the nuisance directly or by his agents, servants or employees, acting within the line and scope of their employment, he is not liable for damages caused by such nuisance. The basis of liability in such cases flows from the creation or maintenance of the nuisance and does not depend upon the ownership or possession of the premises on which it is located. "It is the wrongful act of creating it [the nuisance] with or without the knowledge or notice of its injurious tendencies which fixes the liability," under the ancient maxim of sic utere tuo ut alienum non laedas—"Use your own property in such a manner as not to injure that of another." 9 Coke 59; 1 Bl.Comm. 305; Broom, Max. 365; Black's Law Dic. p. 1095.

■ It may be further stated that such owner may be liable for the continuance of a nuisance *when he has knowledge thereof* although it was created by the act of an unauthorized person. Gray v. Boston Gaslight Co., 114 Mass. 149, 19 Am.Rep. 324. And this court has held that the owner of lands may be liable for a nuisance on his lands originated by his predecessor in title or possession if with knowledge he maintained or permitted a continuation of the same. Sloss-Sheffield S. & I. Co. v. Nance, supra, and such is the rule in California, Georgia, Illinois, Kentucky, Massachusetts, Minnesota, Mississippi, Missouri, New York, Oklahoma, South Carolina, Texas and Washington.

In the Nance case, supra [216 Ala. 237, 113 So. 52], observation is made that to knowingly maintain a private nuisance created by predecessor would be actionable, "but, if he had no notice that the existing condition of the drains was due to the impounded water, it would not be responsible for injury resulting from filling up drains by its predecessor in title."

The complaint in Sloss-Sheffield Steel & Iron Co. v. Salser, 158 Ala. 511, 48 So. 374, 376, averred that *the defendant created the nuisance,* by blasting, and "knew, or by the exercise of reasonable care [on its part] could have known, that plaintiff" was in the reach of and injured therefrom. There was the charge of actual knowledge of the nuisance by the defendant in the Salser case.

The complaint in Birmingham Ore & Mining Co., v. Grover, 159 Ala. 276, 278, 48 So. 682, 684, charged that the defendant was operating, through its agents, and fired the blast that injured an invitee upon its lands at or near the point where the shot was fired. Hence there was actual knowledge on the part of the defendant or its servants, agents or employees in charge, and within the scope of their employment, of the dangerous situation created, the result and the injury to an invitee. The expression used by Mr. Justice Simpson is that: *"If a party who is blasting on his own land knows,* or has reason to believe, or could by reasonable diligence know, that *any one is in dangerous proximity to the place where the blasting is being done,* it is the duty of the person in charge of the explosive either to use means to cover the place, so as to prevent the throwing off of material, or to give warning when the blast is about to be made, in order that those in perilous places may seek a place of safety." [Italics supplied]. The Justice emphasizes the holding thus expressed by observation: "It is not necessary to aver that the party doing the blasting had actual knowledge of the proximity of person injured, yet it is necessary to allege that he either knew, or had reason to believe, or could by reasonable diligence have known, that the party injured was in a position where the missiles from the blasting would probably reach and injure him." [Italics supplied.]

The effect of the cases is, as we have stated above, the *actual knowledge of the dangerous condition being created,* and having such knowledge of the agency and its danger, was charged with the knowledge that parties injured were in a position where the missile from the blasting would probably reach and injure them, or could by reasonable diligence have known of such

position of the party in relation to the peril to which he was thereby being subjected.

We are of opinion that the trial court was in error in overruling demurrer to the count.

We should say of the error alleged to have been committed in permitting the evidence indicated in the record over the due objection by defendant, as follows:

"* * * Counsel for plaintiff, made the following statement:

"The plaintiff offers as if he were offering it by the witness in charge, Strickland, that they had at that time and maintained their own force of law enforcement officers under their employ and control."

The defendant objected on the ground that such testimony was "immaterial, irrelevant, illegal and incompetent." The court overruled the objection, and counsel for plaintiff said: "We offer that, that fact; there is no dispute about it being fact, except he objects as immaterial." The court acceded to this statement, saying: "All right. I will overrule the objection." The defendant's counsel reserved an exception.

The testimony sought to be presented called for facts that were res inter alia without being limited to testimony as to the immediate premises and at the time in question non constat the defendant had other property where its police were engaged or employed and not at or to the lands in question at the time of or immediately before this injury complained of.

Before proceeding to the consideration of the insistence that the trial court committed error in refusing the affirmative instruction duly requested by appellant, we will note the holdings of the Massachusetts and Michigan Courts touching the general duty of landlords to adjacent landowners and those upon the streets adjacent thereto.

In Mahoney v. Libbey et al., 123 Mass. 20, 25 Am.Rep. 6, Mr. Chief Justice Gray said:

"The plaintiff relies on the duty of every owner of land to keep the buildings or structures thereon in such a condition that they shall not, by falling or otherwise, cause injury to property or persons lawfully upon adjoining land.

"But assuming that this duty is absolute while the structures are in the condition in which the owner has put them, or knows or is bound to know them to be, yet, when he has been guilty of no negligence, and the condition of the structures has been changed, so as to render them injurious or dangerous, by vis major, or the act of a third person, which the owner had no reason to anticipate, he cannot be held liable for the injury, or bound to make the structures safe, until he has had a reasonable time, after they have so become dangerous, to take the necessary precaution. Nichols v. Marsland, L.R. 10 Ex. 255, and 2 Ex.D. 1. Gray v. Harris, 107 Mass. 492 [9 Am.Rep. 61]."

In Feldberg, Administrator v. Simon Miller, 217 Mass. 81, 83, 104 N.E. 485, 486, the Justice observed: "* * * It shows that the injury to the plaintiff's intestate was not due to any negligent conduct on the part of the defendant, but was caused by the act of Segal in trying to pull the boards back over the fence after some unknown person had dismantled the hut and placed the roof boards where Segal found them. On the evidence presented the defendant had no knowledge of, and no reason to anticipate, these acts of third persons, and he cannot be held responsible for them. The verdict for the defendant was ordered rightly. Mahoney v. Libbey, 123 Mass. 20, 25 Am.Rep. 6; Quinn v. Crimmings, 171 Mass. 255, 50 N.E. 624, 42 L.R.A. 101, 68 Am.St.Rep. 420; Green v. Nightingale, 211 Mass. 273, 97 N.E. 926."

In Herrst v. Regents of University of Michigan, 231 Mich. 396, 204 N.W. 119, it was held that the owner of property was not liable for the tenant's unsanctioned use of the property or premises in a manner to cause damages to a neighboring proprietor merely because there was possibility of such use by the tenant.

In the instant case, neither the ownership of the premises, nor the premises themselves, nor the presence of slag, iron or brick upon the premises constituted the nuisance. The wrong was brought about by third parties, who had no right or authority to be upon or use the premises at the time and place in question. It was the act of trespassers upon said premises, depriving the owner or trying to remove from the lands iron or slag. The right to take had been granted to its other tenants. The appellee does not contend that actual consent had been given by the owner or its authorized servants or employes within the line and scope of their duty to take the iron or slag in question. The position of appellees is that the facts show permission to do such dangerous acts by

a vis major or a third party or parties, which, in effect, was to deprive the T. C. I. Co. of its property, and to use its vacant lands in so doing as to cause the injury complained of. We do not so interpret the evidence.

The record shows the written lease of the vacant property to the Slag Company and by it to the City of Birmingham, original defendants, to take and remove from the premises the slag, and in the doing of which act of tenancy the owner was indemnified of any injury that may result. To this end the tenant's evidence showed that they so suppressed their shots of dynamite in removal of slag as not to cause injury upon or without the confines of the property. The fact of the intervening of the vis major or third party, trespasser upon the land without sanction, and the taking by such third party or agency of the slag and iron without authority, by the unsuppressed shots of dynamite, does not subject the owner to liability.

The fact that witnesses testified to having heard blasts of dynamite on appellant's property at the slag pit or on other parts of its land, or those shots that could not be located but fired on the land, was not notice to the owner or any dangerous operation or blasting upon its property. The witness Slappey testified he had heard one blast four or five days before from the general direction of appellant's land. Witness Jackson testified that he heard the blast that injured plaintiff and two or three weeks before had heard blasts at that place and one previous blast; had seen a lot of blasts up there where the blast he saw came from that injured Hartline; later witness said there were two previous blasts, the only blasts he could identify as coming from the field in years, and that he lived over there.

The witness Knight testified that he heard fifty or seventy-five blasts from the vicinity of plaintiff's injury and further:

"I expect I heard fifty to seventy-five blasts from over in that vicinity prior to the time Mr. Hartline was hurt. I was back on the south side of those railroad tracks, and the blasts came from a northwesterly direction. The slag pit is in a northwesterly direction. I was not there the particular day Mr. Hartline was hurt. I could not definitely identify the spot from which the blasts came. I would swear that those blasts to which I have referred did not come from the slag put (pit). At the times of the explosions I could have walked right over to the spot where they occurred.

"I could not tell the exact number of blasts that threw stuff on me, but there were several of them that threw just small pieces of slag over there.

"I knew what they were digging for out there.

"I bought some of that iron from out there from Mr. Sam Berman.

"I never heard any blasts in the slag pit. I would not say there weren't any blasts in the slag pit because I was not there at night. I have never heard any blasts in the day time over there in the slag pit. I would have known· if blasts had been put off in the slag pit in the day time. I never heard any blasts in the slag pit in the day time. The slag pit is almost directly west of our plant.

"I never reported anything about these blasts to the police.

"This iron was embedded in the ground and people would dig it out. It was what we call salamanders.

"I don't know who the people were I saw there or going there, and I don't know to whom the trucks I saw there belonged. * * *."

The defendant offered as a witness Mr. Hines, who, in substance, said that he was in charge of getting slag out of the pit for the city. That he blasted in the slag pit sometimes every day, sometimes twice a day, sometimes three or four days before blasting. The noise from his blasts would carry over to the Knight Iron & Metal Company. That he had never heard any blasts on other portions of the property during the time he was there, and he was there every day except Saturdays. That he knew of no other blasting and had heard no other blasting except that which was done by him in the pit.

Will Selly testified that he had dug brickbats and iron out of the property and had never done any dynamiting and had never heard anybody set any blasts off out there.

Mr. Strickland, employed in the Land Department of the appellant, had this property under his control. He visited the property occasionally in the usual round of business and testified that he did not have any knowledge of any blasting on the property, nor had any blasting on the property ever been called to his

attention and that the Tennessee Company had not carried on any operations on this property since 1928 or 1929.

 The plaintiff's position is that defendant knew that blasting operations were being carried on on its land and for this reason there was liability for improper blasting, regardless of whether the defendant knew that such operations were being improperly done. The evidence shows the lease of the land by defendant to tenants, who got the slag by blasting when necessary. The landlord was not charged by such fact with the knowledge of a nuisance caused by improper blasting by its tenants, or by others upon its leased premises, without its knowledge or consent.

 Under our scintilla rule of evidence, would such tendencies of evidence be sufficient to give the defendant or its authorized agents or employes knowledge or notice of the operations of the vis major or third party, operating on its said land and causing the injury complained of, so as to subject it to liability for such injury? We think not.

The judgment of the circuit court is reversed and the cause is remanded.

BOULDIN, FOSTER, LIVINGSTON, and LAWSON, JJ., concur.

BROWN, J., concurring as indicated.

GARDNER, C. J., dissents.

BROWN, Justice (concurring in part and dissenting in part).

The gravamen of Count B of the complaint is the negligent failure of defendant as the owner of the premises to act in the abatement of the alleged nuisance thereon, resulting from blasting operations carried on by trespassers, after notice and knowledge of the maintenance of such nuisance alleged to have proximately caused injury to plaintiff. There is an absence of averment in said count showing that prior to the injury to plaintiff, as a result of such blasting, scrap iron, slag, stone or other substances were thrown from said premises and cast upon the property of other persons or on the streets of the city in the vicinity of the alleged injury of plaintiff, in such sort as to endanger the members of the public in the use of the public streets. In the absence of such averment, no duty on the part of the defendant to act in the abatement of said alleged nuisance appears.

For aught appearing, the blasting, which caused the injury of plaintiff, was the first instance scrap iron or other substances calculated to injure persons on the streets of the city had been thrown thereon.

The plaintiff's right of action rests upon the duty of the defendant to guard the public against injury resulting from the use of its property, whether the persons engaged in the blasting operations were servants, contractors or trespassers. Montgomery Street Ry. Co. v. Smith, 146 Ala. 316, 39 So. 757; Nance v. Gray, 143 Ala. 234, 38 So. 916, 5 Ann.Cas. 55; Mayor & Aldermen of Birmingham v. McCary, 84 Ala. 469, 4 So. 630. But to raise a duty on the part of the defendant to act, in the case of trespassers, notice or knowledge that their acts were endangering the members of the public using the streets was essential. I am, therefore, of opinion that the court erred in overruling the demurrer to said count B. Southern Ry. Co. v. Dickson, 211 Ala. 481, 100 So. 665.

While this court affirmed the judgment in the last cited case, although the count upon which it was tried was demurrable, it held the overruling of the demurrer was error without injury, for the reason that the trial court in the charge to the jury required proof of the omitted averment. That is not so in the instant case. The court merely required plaintiff to prove the averments of his complaint. There is a tendency to relax the rules of good pleading, sometimes to ignore them, because of Rules of Practice in Supreme Court, Rule 45, Code 1940, Tit. 7 Appendix. I am not in sympathy with this thought, and believe that procedural law and the science of pleading is the foundation of our jurisprudence, and without its observance justice cannot be administered. Therefore, I concur in what was said by the late Mr. Justice Sayre in Woodward Iron Co. v. Marbut, 183 Ala. 310, 313, 62 So. 804, 805: "Certainty to a common intent in pleading is essential to the due administration of justice, and it cannot be abolished. By certainty causes and issues are identified for the determination of jurisdiction, and thereby the protection of parties against repeated trials of the same case, the finality of elections of remedies, the comity of courts, and other conserving principles of procedure are assured. * * * And, to come nearer to the needs of the instant case, certainty in some degree is required to give adversary parties reasonable notice of what they

128

must be prepared to meet, and to speed the disposition of causes under their merits."

These utterances have been reaffirmed in Federal Land Bank v. Mulkey, 228 Ala. 500, 153 So. 775; Schwartz Motor Company v. Bradley Real Estate & Ins. Co., 220 Ala. 295, 125 So. 26.

For the error noted, I am of opinion that the judgment of the circuit court should be reversed and the cause remanded.

Treating the count as sufficient, there was evidence offered by plaintiff tending to show that on a previous occasion slag, scrap iron, stone and other substances were thrown a great distance by such blasting on the premises of the railroad company and of private individuals. There was evidence tending to show that the premises in question were under the control and supervision of defendant's engineers and other agents and servants. This evidence authorized an inference to be drawn by the jury that defendant had knowledge or notice of the blasting operations by said alleged trespassers, and this evidence justified the refusal of affirmative charge. On this point, I do not concur in the opinion of Mr. Justice THOMAS, but dissent therefrom.

GARDNER, Chief Justice (dissenting).

The sufficiency of the complaint is, in my opinion, fully sustained by the following authorities: Altorfer Bros. Co. v. Green, 236 Ala. 427, 183 So. 415; Louisville & Nashville R. Co. v. Hawkins, 92 Ala. 241, 9 So. 271; Miles v. Chrysler Corporation, 238 Ala. 359, 191 So. 245; 39 American Juris. 234.

There is evidence tending to show the property in question, owned by defendant, remained in its complete control, and that uncontrolled blastings (fifty or seventy-five in number), had been continued for a period of twelve months. The testimony of the witness Knight discloses these numerous blastings, and their dangerous character; and that of defendant's engineer is to the effect that if such blastings occurred, he would have doubtless known of it. And, indeed, there is evidence tending to show regular inspection of the property by the engineering department of defendant company.

A consideration of the evidence leads to the conclusion therefore that it sufficed also for a reasonable inference by the jury that defendant had knowledge of this condition. And clearly enough it sufficed to show defendant should have had such knowledge by the exercise of reasonable diligence: the property was close to the downtown area of Birmingham and located in a rather populous part, surrounded by places of business of various kinds, and the jury might well imply the danger from such uncontrolled blastings to others using the streets and these places of business, was evident to a reasonable mind. Considering these facts in connection with those outlined in the majority opinion, I am persuaded the question of liability for the continuance of a public nuisance upon defendant's premises was properly submitted to the jury, and that the affirmative charge requested by defendant was refused without error. In my opinion, the following authorities suffice to sustain this view: Joyce on Nuisances, page 47; 39 Am.Jur. page 314; American Law Institute Restatement of the Law of Torts, Vol. II, page 987; 46 Corpus Juris page 745; Gray v. Boston Gas Light Co., 114 Mass. 149, 19 Am.Rep. 324; Southern R. Co. v. Kentucky, Ky. 101 S.W. 882, 12 L.R.A.,N.S., 526; Fletcher v. Baltimore & P. R. Co., 168 U.S. 135, 18 S.Ct. 35, 42 L.Ed 411; Board of Chosen Freeholders of Hudson County v Woodcliff Land Co., 74 N.J.L. 355, 65 A. 844; Timlin v. Standard Oil Co., 126 N.Y. 514, 27 N.E. 786, 22 Am.St.Rep. 845; Montevallo Mining Co. v. Little, 208 Ala. 131, 93 So. 873.

My conclusion is no reversible error intervened, and that the judgment should stand affirmed. I therefore respectfully dissent.